UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

THE PEOPLE OF THE UNITED STATES OF AMERICA §

ON THE RELATION OF, MICHAEL HAMILTON §

# 17072-057 (ex rel) §

§

PETITIONER §

§ **1: CV-01-0039**

V. §

§ CIVIL NO._____

§

§ FILED

§ SCRANTON

MR. R.M. REISH, WARDEN OF FCI SCHUYLKILL §

RESPONDENT § JAN 1 0 2001

_____

PER____ _BM__

DEPUTY CLERK

## MEMORANUM OF LAWS IN SUPPORT OF PETITIONER'S

## HABEAS CORPUS Ad SUBJICIENDUM MOTION

§ I. <u>Legal Argument For Issue One:</u>

A. Statue Intent for controlled substance Argument:

   1. Petitioner asserts that his issue is Constitutional and jurisdictional. Petitioner's Habeas Corpus Motion(hereafter as motion) sec 12, ground A,para. 2, p.5 (written as § 12. A. 2, P. 5)

   2. The legislative Branch has given the Judicial Branch the authority to assign substance or specific chemical mixtures to one of the five(5) Schedules set forth and required in 21 U.S.C. § § 811-812.

   3. To distinguish a controlled substance the legislative Branch dictated to the Judicial Branch the method and factor to be considered for a controlled substance to be determined as such and placed in one of the five schedules. See Motion, § 12. A. 3 and 10 ppp. 5(a) (1) and (2) **United States V Dimeo** 753 F supp. 23, 28-29(D. Me, 1990).

   4. Petitioner does not contest his crack conviction under rule " rule of lenity " or "pharmalogical similarities", but being convicted for possessing a controlled substance in 21 U.S.C. § 841 (a) (1) defined in 21 U.S.C. § 802. (con't on top of pg. 2).

   5. Petitioner states his New York State conviction is unconstitutional which renders his present Federal sentence illegal due to a plea rendered not knowingly and intelligently which was used to enhance his Federal sentence. (con't on the top of pg. 12).

(6), but not listed in any of the Five required Schedules of 21 U.S.C. § 812. **United States** v. **Kinder**, 946 F2d 362, 368 (5th Cir. 1991); **DiMeo**, supra; and in **Motion**, § 12.A.10, p. 5a(2).

5.  Both the Court's and Congress have concluded that cocaine base crack is a separate drug from cocaine powder and its other forms through 21 U.S.C. § 841(b)(1)(A)(iii), and is to be separately assigned a Schedule after it is classified.  **United States** v. **Fisher**, 58 F3d 96, 99 (4th Cir. 1995); cert. denied, 133 L.Ed.2d 229, 116 S.Ct. 329 (1995);  **United States** v. **Berger**, 103 F3d 67, 71 (9th Cir. 1996); 21 U.S.C. § 812 and § 811 respectively;  **Motion**, § 12.A.3-5, 9-11, pp. 5a(1) to (2).

6.  Congress targeted one form of crack cocaine with the specific "chemical mixture" of cocaine hydrochloride disolved into sodium bicarbonate commonly known as baking soda. **Motion**, § 12.A.6-8, p. 5a(1);  21 U.S.C. § 802(40); and **Affidavit (Aff.)** ¶ 1, p. 2.

7.  No ambiguousness exists that crack is manufactured distinctly different from cocaine powder. **United States** v. **Culpepper**, 916 F.Supp. 1257-58 (N.D. Ga. 1995);  **Aff.** ¶ 2, p. 2.  Since the baking soda "crack" was what concerned Congress that brought about the 100 to 1 ratio that could be smoked, it should be so separately identified in the Schedules. Cf. **United States** v. **Shaw**, 936 F. 2d 412, 416 (9th Cir. 1991);  **United States** v. **Booker**, 70 F3d 488, 490-91 n. 9 (7th Cir. 1995);  **Motion**, § 12.A.4-12, pp. 5a(1) and (2), **Aff.** ¶ 3, p. 2.

8.  **Shaw** correctly found that there is no statute or Guideline that defines "cocaine base," id., at 415;  so Petitioner will assert that as a fact not in dispute. **United States** v. **Brown**, 859 F2d 974, 975-76 (D.C.Cir. 1988) (per curiam). **Motion**, 12.A.4, p. 5a(1).

9. Not the Judicial, but the Legislative Branch was who chose a "scientific[ and] precise method of determining which substances are subject to an enhanced penalties and avoided individualized inquiry into the ultimately use of the substance." **United States** v. **Palacie**, 4 F3d 150, 153 (2nd Cir. 1993).

10. The "rational purpose to clause (iii)" must be concluded that the statute's explicit reference for an intent to address separately the trafficking of cocaine base. **Fisher**, at 99; **Motion**, § 12.A.7, p. 5a(1).

11. The best analogy to quickly make Petitioner's point here, is "statutorial distinction" versus "different degrees of a single offense principle." **Mulaney** v. **Wilbur**, 421 U.S. 684, 688, 44 L.Ed.2d 508, 513, 95 S.Ct. 1881 (1975).

12. While murder and manslaughter are distinct offenses by statute and not a different degree for a single offense, their common factor is the death of a human being by another human being. Cf. 18 U.S.C. §§ 1111 with 1112.

13. The separating ingredient of the two is "malice aforethought is made the distinguishing element for murder" that is "expressly excluded as an element [for] the offense of manslaughter." **Mulaney**, supra.

14. Congress made distinctions in 21 U.S.C. § 802(17), (19) and (20) for the opium that also includes the controlled substance of cocaine and its relatives. Where cocaine is solely defined and neither "cocaine base" or "crack" are mentioned; a particular separation is depicted for the terms "opium poppy" and "poppy straw," both exempting the seeds although all are from "opium poppy" and the same plant. **Motion**, § 12.A.9(b) through (f); and **United States** v. **Deisch**, 20 F3d 139, 149 (5th Cir. 1994) (No cocaine base or crack or equivalent term is in 841(a)).

15. Because Petitioner is incarcerated for possession of an alleged "controlled substance that **is not** identified as a controlled substance under § 812 as categorized by the factor criteria in § 811, Petitioner's conviction cannot

survive a collateral attack as Constitutionally permissible. **Motion,** § 12.A.13-14, p. 5a(2).

## B. **Elements of Indictment For Offense.**

1. Before Petitioner can legally be convicted for possessing a controlled substance, **that substance must be** in § 812 with Petitioner as the principal before he can be convicted for violating United States Laws. **Motion,** § 12.A.2-14, pp. 5a(1) and (2).

2. By "crack" cocaine not being Scheduled though mentioned by Congress for punitive measures, a "statutorial distinction" from cocaine powder requires that the indictment bear that specificity. Petitioner's did not have such a distinction or specificity, so that element essential for a finding of guilty in order to punish at sentencing failed. **Deisch,** at 149; citing **Hale** v. **Henkle,** 201 U.S. 43, 59, 65 L.Ct. 370, 373, 375 (1906).

3. Failure of the indictment to allege all the elements of an offense may not be curred by evidence or instructions at trial, nor by a bill of particulars. **Deisch,** at, 146; nor can it be amended by adding material allegations as to the offense's charged. Id.

4. The grand jury **must** find the specific element that the crack alleged the Petitioner illegally possessed, though not Scheduled, contained baking soda and was the type to be smoked and feared by Congress that caused the sentence enhanced ratio of 100 - 1 . **Deisch** and **Hale,** both supra; **Motion,** § 12.A.4, 6-9(f), and 10-14, pp. 5a(1) and (2).

5. The question is whether the crime is one for which the **statutes** authorize the court to award an infamous punishment ultimately awarded is an infamous one." **Ex Parte Wilson,** 114 U.S. 417, 426, 5 S.Ct. 935, 939, 29 L.Ed. 89 (1895).

6.  The prosecutor had the duty to insure Petitioner is given notice of the illegal acts he stands accused, and that his guilt is based "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." **Jackson** v. **Virginia**, 443 U.S. 307, 315, 61 L.Ed.2d 560, 571, 99 S.Ct. 2781 (1979). **Motion**, supra.

7.  The prosecution failed in this because he should have called it to Petitioner's attention that he was indicted for an alleged controlled substance that was not listed or shown to be a controlled substance within the Schedules of § 812. Petitioner should therefore be released, his conviction set aside, and his charges dismissed.  **Aff.** ¶ 4, p. 2.

## § II.  **LEGAL ARGUMENT FOR ISSUES TWO THROUGH FOUR**

### A.  **Bill Of Attainder**

1.  No matter the Legislative act, whether applying to either named individuals or so easily ascertainable groups in such a way as to inflict punishment on them without a judicial trial are bills of attainder prohibited by the Constitution. **United States** v. **Brown**, 381 U.S. 437, 448-49, 14 L.Ed.2d 484, 492, 85 S.Ct. 1707 (1965). **Motion**, § 12.B.1, p. 5.

2.  Three general propositions with respect to governmental grouping exists. There are "**imposed punishment**," a **consistency is not dependent on the race of those 'burdened or benefitted' by a particular classification**," and **congruence of Equal Protection analysis are the same in both the Fifth and Fourteenth Amendment**.  **Wyant** v. **Jackson Board of Ed**, 476 U.S. 267, 273-274, 90 L.Ed.2d 260, 268, 106 S.Ct. 42 (1985);  **Richmond** v. **J.A. Croson Co.**, 488 U.S. 469, 494, 102 L.Ed.2d 854, 882, 109 S.Ct. 706 (1989);  **Buckley** v. **Valeo**, 424 U.S. 1, 93, 46 L.Ed.2d 659, 729-730, 96 S.Ct. 612 (1976);  **Motion**, § 12.B.1-2, p. 5-5b.

- 5 -

3. Cocaine base "crack's" enhanced penalty meets this first prong where Congress distinguished "crack" made by cocaine hydrochloride **and** baking soda from cocaine powder and its other forms. **Fisher**, at 99. The punishment for the alleged controlled substance is grossly improportionate compared to that punishment for possessing the cocaine powder needed to make the crack with baking soda, targeting primarily minorities. U.S. Sentencing Guidelines (USSG) 2D1.1; and **Motion**, § 12. b.3-5, p. 5b(1); **Richmond**, supra.

4. Petitioner's "direct evidence" is from the Congressional and Senate hearings, showing the law was born with full knowledge of the "specified affected persons or indentifiable group" that would primarily target black people. **Motion**, § 12.B.4 - 7, p. 5a; **Richmond** and **Buckley**, both supra; and **Aff**. ¶ 5, p. 2.

5. Congress further attempted to remove the racial overtones of this law to be enacted to benefit the African-American as an identified group that would benefit from this law while saving those minority neighborhoods. **Motion**, § 12.B.2-4, p. 5

6. This statement from a legislative official, joined by several others, is powerful evidence that the legislative principles to race when it ultimately enacted laws creating an infamous punishment for the identified group where statistics showed would impact primarily on black people, was racial tinkering. **Miller** v. **Johnson**, 132 L.Ed.2d 762, 781 (1995), **Motion**, § 12.B.3-7, p. 5b

7. Legislation "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an indentifiable group" renders it unconstitutional. **Personal Adm.** v. **Feeney**, 442 U.S. 256, 279, 60 L.Ed.2d 870, 99 S.Ct. 2282 (1979).

8. The Congressional reports leave little doubt that the black youths, like Petitioner, were Congress' targets and motive to create the stringent "crack" law

punishment to put them in prison for a very long time.  **Motion**, § 12.B., supra.

9.  Petitioner lacked judicial protection by the judicial process because the scientific chemical make-up is a statutory element of a drug offense that must be proven that Congress has done by legislation, relieving the prosecution of its duty to prove this element at Petitioner's trial. **United States** v. **Uwaeme**, 975 F2d 1016, 1019-20 (4th Cir. 1992).

10.  The Bill of Attainder Clause's purpose, "was intended not as a narrow, technical . . . prohibition, but rather as an implementation of the separation of powers, a general safe-guard against the legislative exercise of the judicial function, or more simply —— trial by legislation." **Brown**, at 442, 14 L.Ed.2d, at 488. **Motion**, § 12.B.1-2, p. 5.

11.  Congress enacted "crack" statutes, lessened the prosecution's burden of proof, and enhanced infamous punishment encroaching the barriers that were "errected to ensure that the legislature would not overstep the bounds of its authority and perform the functions of the other departments" that the Bill of Attainder's "clause was regarded as such a barrier." **Brown**, at 444, 14 L.Ed.2d, at 489.

12.  Petitioner has shown the enhanced penalty, the special persons as an identified group, and the lack of protection of the judiciary that involves this Bill of Attainder violation. U.S. Const. Art. I, § 9, cl. 3;  **Motion**, § 12.B.

13.  To punish more for an alleged criminal act **not** listed by statute as a controlled substance based on "helping" improve a minority neighborhoood "threatens to carry us further from the goal of a political system in which rack no longer matters. **Shaw** v. **Reno**, 509 U.S. 630, 125 L.Ed.2d 511, 5 5, 113 S.Ct. 2816 (1993).  All racial classifications "are motivated by a racial purpose of object. **Miller**, at 777.

14.  Even when "programs may have been motivated . . . by good intentions, [we] cannot provide refuge from the principle that under our Constitution, the govern-

ment may not make distinction on the basis of race" as Congress did here for an alleged "neutral" motive to enact the law. <u>Adarand Construction, Inc.</u> v. <u>Pena</u>, 515 U.S. ___, 132 L.Ed.2d 158, 179-80, 115 S.Ct. 2097 (1995); <u>**Miller**</u>, supra; and **Motion**, § 12.B.3-7, p. 5b

15. For the unconstitutional enactments of law contrary to the Bill of Attainder clause shown to exist above, Petitioner's conviction and sentence should be set aside, and the charges ordered dismissed.

## B.  Separation Of Powers

1. The "tripartite system of government [requiring] all Legislative Powers vested in Congress of the United States" that makes up the Lgislative Branch of this tripartite system, with the Executive and Judicial Branches makeing up the other two. <u>**Mistretta**</u> v. <u>**United States**</u>, 488 U.S. 361, 371, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989); and <u>Bowsher</u> v. <u>**Synar**</u>, 478 U.S. 714, 722, 106 S.Ct. 3181, 3185-86 (1986); **Motion**, § 12.C.1, p. 5.

2. This three part system is "responsible to the **people**" that at times "**produces conflicts, confusion** and disorder at times," but it was "deliberately structured to assure full, vigorous, and open debate on the great issues affecting the **people** and to provide [an] operation of checks on the exercise of government power." <u>Bowsher</u>, supra.

3. Judiciary has depicted conflicts and confusion at defining "cocaine base to include 'crack'" that the Ninth Circuit Court of Appeals "understood to mean cocaine that can be smoked, unlike cocaine hydrochloride" in its natural form. <u>United States</u> v. <u>Lopez-Gil</u>, 965 F2d 1124, 1129 (1st Cir. 1992); <u>Shaw</u>, at 414.

4. These conflicts of confusion has made disorder prejudicing Petitioner at trial when the Government's ability to "establish that the substance involved . . . was prepared or manufactured with sodium bicarbonate: as 'cocaine base' crack," is

in question, **Culpepper,** at 1258; or of cocaine base not being "crack absent the **sodium bicarbonate." Lopez-Gil,** supra;  **Motion,** § 12.C.3, p. 6a.

5. **Lopez-Gil**'s Court determined that there were "two forms of cocaine that people use," that of snorting and smoking, while the **Booker** Court held that "freebase" was manufactured in different way s." Id., at 1130, and 491 respectively.

6. **Booker** noticed various forms that included disolving cocaine in ammonia and adding either or another **organic solvent** that is explosive, or disolving cocaine hydrochloride in baking soda and water, then boiling the mixture. Id., at 491.

7. Congress was made aware of this inter-circuit **conflict** by the U.S. Sentencing Commission through Amendment 487 that Congress let pass on 1 Nov. 93, and again  made their intent of the form of **crack** being targeted was the cocaine base with **sodium bicarbonate. Chapman** v. **United States,** 500 U.S. ___, 114 L.Ed. 2d 424, 111 S.Ct. 1919 (1991); and **United States** v. **Jackson,** 59 F3d 1421 (2d Cir. 1986), cert. denied, 134 L.Ed.2d 551, 116 S.Ct. 1428 (1996).

8. The changed Amendment verbiage of USSG 2D1.1 was by inserting **usually** in key positions to read "'Cocaine base, for the purpose of this Guideline, means **'crack,'**" the street "name for a form of coaine base, **usually** appearing . . . lumpy ." **Booker,** supra; **United States** v. **James,** 78 F3d 851, 855 (3rd Cir. 1995), cert. denied, 136 L.Ed.2d 77, 117 S.Ct. 128 (1996).

9. This is where the  revision by the Judiciary has relieved the prosecution that **crack** is made with **cocaine hydrochloride** and **baking soda** that Congress had targeted by inserting **usually** in the Guidelines.  This insertion has given the prosecution a loophole to omit at trial and give a sentence enhancement without showing the **"proponderance of evidence"** the law requires. Cf. **Lopez-Gil, Booker, Culpepper,** and compare with **James** and **Jackson.**

10.  Congress' Legislative removal of the Prosecution's "burden of proof" at trial relates to the statutorial element of § 841(b)(1)(A)(iii) as the aggravating factor "upon which a **harsher** sentence is based," and is why the proponderance of the evidence showing is required.  Id.; **McMillian** v. **Pennsylvania**, 477 U.S. 79, 84-85, 91 L.Ed.2d 67, 75, 106 S.Ct. 2411 (1986); **Motion**, 12.A.9, p. 5a(1-2); and 12.C.2-6, p. 5-6a; and **Aff.** ¶ 6, p. 3.

11.  The fundamental rights of Constitutional dimension denied by this usurp are: **a**) present a defense at trial;  **b**) confrontation with cross-examination of adverse witnesses;  **c**) equal protection of the laws with due process. **Crane** v. **Kentucky**, 476 U.S. 683, 690, 90 L.Ed.2d 636, 645, 106 S.Ct. 2412 (1986); **Pointer** v. **Texas**, 380 U.S. 400, 403, 13 L.Ed.2d 934, 936, 85 S.Ct. 1065 (1965); **Buckley**, supra;  **Bolling** v. **Sharpe**, 347 U.S. 497, 499, 74 S.Ct. 693-94, 98 L.Ed.2d 884 (1954).  These fundamental rights cannot be usurped by Congress.

12.  To circumvent judicial authority renders Petitioner's trial counsel ineffective at trial as defined within the Sixth Amendment, "when counsel, 'entirely fails to subject the prosecution's case to meaningful adversarial testing,'" and becomes presumptively unreliable. **United States** v. **Cronic**, 466 U.S. 648, 659, 80 L.Ed.2d 657, 668, 104 S.Ct. 2039 (1984); **Motion**, § 12.C.6, p. 6a.

13.  When Congress "draw[s] to itself, or to either branch of it, the power to remove or the right to participate in the exercise of that power, [they] infringe [upon] the Constitutional principle of the separation of powers." **Bowsher**, at 724, 91 L.Ed.2d, at 595; citing **Myers** v. **United States**, 272 U.S. 114, 71 L.Ed. 160, 47 S.Ct. 21 (1926);  **Motion**, § 12.C.2, p. 5-6a.

14.  Because Congressional intent has been shown from the 1986 and 1995 hearings for **crack** were solely concerned with the form that is smoked containing baking soda due to its cheapness and ready access, when the laws were passed but are not

listed in schedules, Petitioner's conviction and sentence is to be dismissed and set aside, along with the charge thereto. **United States V. Pinto** 905 F2d 47, 50 (4th Cir. 1990); **Booker**, at 1258; **Lopez-Gil** at 1129 ; **Shaw** at 416; and **motion.** § 12.C.6, p. 5c ; and **Aff.** ¶¶ 1-6, pp. 5-6 and 5c.

## C. EQUAL PROTECTION

1. Under the UNited States Constitution, " the government may not make distinction on the basis of race " with laws that "explicitly distinguish between individuals on racial grounds ", because such distinctions and laws "fall within the core of the equal protection clauses prohibition. " See **Adarand Construction, Inc**, 132 L. Ed. 2d, at 179-80 ; and **Shaw v. Reno**, 125 L.Ed. 2d, at 525.

2. Statues are subjected to " strict scrutiny " under the equal protection clause, not just when they contain express racial classification, but also when——though race neutral on their face, they are motivated by a racial purpose objective . **Miller**, at 777.

3. Congress has sufficiently shown they were motivated to save, benefit and clean up the **blach** communities because Congress had determined that the " black " minorities were the minority neighborhoods that was where "crack" was being used most [and] creating the worst problems. **Motion**, § 12. D. 1, p.6.

4. There is no extraordinary justification that exists because of the prejudice that will reinforce the belief that individuals should be judged by the color of their skin, possesses a risk of lasting harm to our society, that may balkanize us into competing racial factions that threatens to carry us further from the goal of politics in which race would no longer matter. **Shaw v. Reno**, at 535 ; **Motion** , § 12. D. 1, p. 6.

5. Since Equal Protection "is essentially a direction that all persons similarly sit-uated should be treated alike " and Petitioner asserts that " legislators designed a racial classification to benefit a certain race or group[**Pyler v. Reno**, at 544-545, and motion , 12. D. 1-7 pp. 6-b.

## ARGUMENT FOR A PLEA THAT WAS NOT KNOWINGLY AND INTELLIGENTLY MADE

1. The law is crystal clear that before accepting a plea of guilty the
   court must address the defendant personally and must inform him of
   each and every right his plea is waivering and assure the defendant
   is fully aware of the consequences of his guilty plea: **Boykins v.
   Alabama**, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274(1969). Un-
   like the present case under docket no. 14649/89 wherein the court
   failed to inform the Petitioner of a Constitutional right; See ATT.
   # 6. which is the plea transcript for case number 14649/89. See page
   9 line one (1) to twenty-five (1-25): Nowhere in the transcript where
   *court informed Petitioner of his Constitutional right to confront
   and cross-examine adverse witnesses. Failure to do so should render
   his present Federal sentence illegal; which has a collateral result on
   current sentence; See **Clark v. Commonwealth of Pennsylvania**, 892 F.
   2d 1142(3rd. Cir. 1989), cert. denied sub nom. **Castille v. Clark**, 496
   U.S. 942, 110 S Ct. 3229, 110 L. Ed. 2d 675(1990); See motion on top
   of page -6b 1.line (1).

2. Petitioner request the court take jurisdictional notice upon review-
   ing ATT. #5. which is the Prosecutor's Opposition Motion To Vacate;
   docket no. 14649/89 . In said motion the prosecutor used deception in
   trying to mislead the court by creating a smoke screen. Once the
   smoke clears, the court will clearly see through the word games the
   prosecutor is playing. See prosecutor's response in Opposition Motion
   To Vacate pg 3. In fact prosecutor's motion supports the Petitioner's
   argument that the court did not advise the Petitioner of his right to
   confront and cross-examine adverse witnesses, which is required by the
   amended Constitution of the United States of America.

See Article VI ; also see A B A, the standards relating to plea of guilt; section 1.4 [a] ; See also Federal Rules of Criminal Procedure: Rule # 11 et seg. In light of the facts present, the Petitioner pray that the court rule his prior conviction unconstitutional and vacate his present sentence for relyinf on prior conviction to enhance his present sentence. Due to the fact that the Petitioner was not advised of his Constitutional right to confront and cross-examine adverse witnesses: See **Boykins v. Alabama** Supra before acting upon a plea of guilt, the court must address the defendant personally and must inform him of each and every right he is waving; See **McCarthy v. United States**, 394 U.S. 459, 895 Ct. 1161, 22 L. Ed. 418. 1969. Petitioner pray that the court vacate present Federal sentence for being illegally imposed.

3. Petitioner insert that had he known of his right to confront and cross examine adverse witnesses when charged with a misdemeanor, he would have instead elected to proceed to trial and enjoy his Constitutional right to confront and cross examine adverse witnesses; See **Kercheval v. U.S.** , 274 U.S. 220 1927, the United States Supreme Court held that a plea of guilty cannot pass Constitutional scrutiny if it is shown that the plea was enduced by coercion, physically or mentally, false promises, trickery, fear, deceit, mistaken belief, thrats or given through inadvertence or ignorance. When a violation of any of these precepts is shown, the plea is Constitutionally invalid. **Petitioner insist that mistaken belief, inadvertence and ignorance** is what transpired in the present case no. 14649/ 89 during the plea. Petitioner pray that the court vacate his present Federal sentence for relying on an unconstitutional prior New York State conviction to assess additional criminal history points which render his present Federal sentence illegal. [**See motion 6 b 1 line two(2)**]

## CAUSE FOR FAILURE TO FILE TIMELY

Petitioner inserts that the cause for the delay in filing should be con-
tributable to **"Interference By Officials"** of the New York State jurisdic-
tional system which substantially delayed bringing to the Petioner's
attention that his **Motion for Appealability** was denied. Petioner states
that he was hindered from proceeding any further without an **Order of
Denial** of the **Motion of Appealability** which he seeked diligently through
mail and telephone communications, which until recently <u>November 17, 2000</u>,
it was brought to his attention of the **Order of Denial.** Petitioner likes
to state: due to the number of people the New York State jurisdictional
system deals with daily, led him to mistakenly believe that this was the
cause of the delay. It is the officials of New York State responsibility
that a defendant in a case receive the ruling of a decision through signed
certified mail which in this case did not happen.

In light of fact the Petitioner was unable to present arguments in his
2255 Motion which was filed on <u>December 15, 1997</u> . Again Petitioner
states that **"Interference By Officials"** is cause for delay; See **Murray v.
Carrier**, 477 U.S. 478, 485, 91 L. Ed. 2d 397, 106 S. Ct. (1986); See
Motion 6b1 line three(3). Petitioner pray that the court vacate his pre-
sent Federal sentence for relying on a prior unconstitutional New York
State conviction to enhance his present sentence.

14

## PROPER VEHICLE FOR RELIEF ARGUMENT

Petitioner inserts that he is correctly pursuing a relief through proper vehicle of a 2241 in light of the fact that his present Federal sentence has been enhanced for prior unconstitutional New York State conviction, therefore collateral enhancement is attached; See **Young v. Vaughn**, 83 F. 3d 72 (3rd Cir. 1996). The court ruled Young may attack his expired conviction in the context of his **Habeas Petition**. We conclude that because Young's current sentence is a collateral result of his expired conviction, he may do so; see **Clark v. Commonwealth of Pennsylvania,** 892 F. 2d 1142 (3rd Cir. 1989), cert, denied sub nom; **Castille v. Clark**, 496 U. S. 942, 110 S. Ct. 3229, 110 L. Ed. 2d 675 (1990). The court held there that although the District Court lacked jurisdiction over Clark's petition attacking two convictions whose sentence had expired we could review those sentences because of their collateral enhancement of the sentence that Clark was still serving. Id. at 1143 n 2 & 1145.

Petitioner inserts that the logic applied to **Young v. Vaughn**, supra; are similar to the circumstances the Petitioner now faces, therefore the Petitioner prays that the court apply the same logic and reasoning upon making a conclusion; Petitioner prays that the court vacate his Federal sentence for relying on a prior unconstitutional New York State conviction which was relied upon to enhance his present sentence by adding two (2) additional criminal history points which makes the present sentence illegal.

For the reasons, facts and arguments, Petitioner prays that his **Habeas Corpus Ad Subjiciendun Motion** is granted, the conviction set aside and the charges are ordered dismissed and the Petitioner released from confinement.

Other alternative Petitioner pray that the court vacate his sentence in regards to issue five(5) ; Prior conviction of New York State being unconstitutional which makes Federal sentence illegal.

**I declare under penalty of perjury that the foregoing is true and correct. Exercuted on** November 10, 2000 .

michael Hamilton

MIchael Hamilton

# 17072-057

FCI Schuylkill

P.O. Box 759

Minersville, PA.

17954-0759

I, Michael Hamilton do swear that I have served the parties stated below a copy of this motion:

(1). Clerk of Court- United States District Court for the Middle District of Pennsylvania, 240 W. Third St. Suite 218 Williamsport, PA.

# TABLE OF ATTACHMENT

| DOC NO. | DOCUMENT DISCRIPTION |
| --- | --- |
| 1. ATT. # 1. | Magistrates Recommendation. |
| 2. ATT. #2. | Petitioner's Objection to Magistrates Recommendations. |
| 3. ATT. #3. | News Article From Flint Journal. |
| 4. ATT. #4. | Fourth Circuit Court of Appeals Opinion Of The Petitioner's Case. |
| 5. ATT. #5. | Prosecutor's Opposition Motion To Vacate. |
| 6. ATT. #6. | Plea Transcript In Prior Conviction New York State. |

ATT #1

MAGISTRATES RECOMMENDATIONS

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL HAMILTON,                )
                                 )
             Petitioner,         )
                                 )
        v.                       )    1:97CV1296
                                 )    1:94CR66-1
UNITED STATES OF AMERICA,         )
                                 )
             Respondent.         )

FILED
JUL 3 0 1998
US DIST OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Michael Hamilton, a federal prisoner, has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. A jury found petitioner guilty of possession with intent to distribute about 116 grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), 18 U.S.C. § 2. On July 27, 1994, petitioner was sentenced to imprisonment for a term of 200 months. Petitioner appealed, and the Fourth Circuit affirmed the conviction and sentence. United States v. Hamilton, No. 94-5593 (4th Cir. Apr. 20, 1995) (unpublished). On June 19, 1995, petitioner filed a motion for correction of sentence, pursuant to Fed. R. Crim. P. 35(a), which the court deemed a § 2255 motion. The government did not oppose the motion and the court granted relief on May 16, 1996. On August 6, 1996, petitioner was resentenced to imprisonment for a term of 180 months. Petitioner filed this § 2255 motion on December 15, 1997, setting out five grounds for relief. The government responded and petitioner replied.

## PRELIMINARY MATTERS

The government contends that petitioner's motion is barred by statutory and local rules of the Fourth Circuit which prohibit filing a second or successive § 2255 motion without first obtaining authorization from the Fourth Circuit. 28 U.S.C. §§ 2244(a), 2255; Local Rule 22(d). (Docket No. 110 at 3-4) The statutes and local rules were amended pursuant to Sections 105 and 106(b)(3) of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 (1996) (effective April 24, 1996) ("AEDPA"). The statute does not require a district judge to entertain an application for a writ of habeas corpus

> if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a). The local rule requires that anyone seeking to file a second or successive application for relief pursuant to § 2255 must first file a motion for authorization with the Fourth Circuit on a form provided by the clerk. Local Rule 22(d). Section 2255 provides that,

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain
>> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

-2

28 U.S.C. § 2255.  The government argues that this § 2255 motion should be dismissed because the statutes and rules require that petitioner secure authorization to file a second or successive motion from the Fourth Circuit before he may file another § 2255 motion.  (Docket No. 110 at 4)

Replying to this argument, petitioner noted that, at his resentencing on July 22, 1996, which was pursuant to petitioner's Rule 35 motion that was construed as a § 2255 motion, both he and his counsel were concerned that a ruling in the case not bar petitioner's bringing further appeal either to the resentencing or to the conviction pursuant to § 2255 or other available relief. (Docket No. 115 at 1-2)  Petitioner was particularly concerned that he have an opportunity to challenge his sentencing, based on due process and other constitutional objections to his sentencing under the guidelines for "crack," claiming that he should have been sentenced based upon cocaine hydrochloride.  (Docket No. 109, Sentencing Tr. at 9)  Petitioner contends that the court, and the government through its assent, promised him that he would have an opportunity to file a later § 2255 motion "raising those issues that would have otherwise been properly before the Court at resentencing."  (Docket No. 115 at 2)  He also contends that, because his original § 2255 was pending when the AEDPA took effect, the requirement that petitioner apply to the Fourth Circuit for authorization to file a successive motion does not apply to him. (Docket No. 115 at 4)

-3-

The motion before the court was filed on December 15, 1997, well after April 24, 1996, the effective date of the AEDPA. Therefore, the provisions of the AEDPA apply to this motion, including those relating to second or successive motions. Richardson v. United States, Nos. 6:97CV113, CR-92-238-05-WS (M.D.N.C. Mar. 18, 1997) (unpublished) (citing cases). If petitioner's motion is successive, and neither party denies that it is, then under the applicable law he must receive authorization from the Fourth Circuit. Benton v. Washington, 106 F.3d 162, 164 (7th Cir. 1997) (where a previous motion was dismissed, the only reason to refrain from applying for authorization to file a successive § 2255 motion is where it was dismissed without prejudice because of deficiencies under R. 2(e)). However, this leaves open the question of the promise that the court and the government allegedly made him, and its legal effect.

The court had reassured petitioner that it did not intend to foreclose his appeal rights, and that the sentencing proceeding would not prejudice him in the disposition of any successive § 2255 motions that he might file. (Docket No. 109, Sentencing Tr. at 12) When petitioner's counsel requested that his client's substantive challenges to his sentencing be reviewed in the initial § 2255 motion, however, the court stated that the issue was not properly before the court. (Id. at 9)  But the court left open the possibility of considering the claim in the context of a motion alleging ineffective assistance of counsel later on. (Id. at 11) The court stated that petitioner could file a successive motion "if

-4-

for some reason there were facts overlooked at [sentencing], that you believe should have been presented to the Court or as you have said that you have since learned should have been presented to the Court."   (Id. at 13)   In addition, the government appeared to assent to this arrangement by stating that it would respond to any further issues in future motions "assuming he has not waived that issue by failing to appeal it and could raise it in another 2255." (Id. at 10) Therefore, while there is no formal agreement on the record, petitioner was reassured that he could present grounds alleging ineffective assistance of counsel and grounds related to factual matters that were unknown at the time of his sentencing.

The conversion of petitioner's Rule 35(a) motion into a § 2255 motion was done by order of the court.   (Docket No. 57)   The statute requires application to the Court of Appeals for authorization to file a motion where "the legality of such detention has been determined . . . on a prior application for a writ of habeas corpus."   28 U.S.C. § 2244(a) (emphasis added). Because the court itself, in its discretion in the orderly administration of justice, chose to construe the motion as one pursuant to § 2255, and there was no "prior application" for a writ of habeas corpus coming from the petitioner himself, the motion presently before the court is better considered as an amendment or continuation of this original motion and not a second or successive motion.   See also Benton v. Washington, 106 F.3d 162, 164 (7th Cir. 1997) (considering prior dismissals of § 2254 petitions for nonexhaustion or because of formal defects under Rules 2(e) as

-5-

insufficient to invoke the restrictions on second or successive motions in the AEDPA).    The court has not found any cases ruling on the particular issue.    However, under the particular circumstances of this case where the motion was converted by order of the court, not by application of the petitioner, and where the court assured petitioner he could file another Section 2255 motion, the petitioner should not be held responsible.    The first paperwriting ought not to be deemed an initial motion for purposes of interpreting the restrictions on second or successive § 2255 motions.

Accordingly, while the court recognizes that, in cases of doubt, the prudent course would be to apply to the Fourth Circuit for authorization where there is a possibility that a motion could be considered a second or successive one, <u>Benton</u> at 165, in this instance, where the court, and not petitioner, initiated the filing of the prior § 2255 motion and assured petitioner he could file another motion to raise ineffective assistance of counsel claims, justice and economy would be better served by allowing the subsequent motion to proceed.    Thus, the government's suggestion, that petitioner's motion be dismissed as a second or successive motion for failure to seek authorization from the Fourth Circuit, will be rejected.

### DISCUSSION

Petitioner sets out five grounds for relief.    Four of these are constitutional or statutory objections to his sentencing as based upon the guidelines for "crack" over cocaine hydrochloride.

(Docket No. 100)   These are brought in the form of allegations
that:

- "crack" is not listed as a controlled substance, and his
  sentencing under the guidelines for "crack" thus violates his
  due process (Ground 1);

- enhanced punishments for "crack" constitute a bill of
  attainder, which is constitutionally prohibited, because they
  were allegedly designed by Congress to apply mainly to
  neighborhoods populated by minorities (Ground 2);

- enhanced punishments for "crack" violated the separation of
  powers doctrine, unconstitutionally allocating judicial powers
  to the legislature (Ground 3);

- sentencing according to "crack" violates due process where
  Congressional purpose allegedly was discriminatory in
  attempting to clean up minority communities (Ground 4).

Ground 5 alleges various omissions and errors of counsel
constituting ineffective assistance of trial counsel.

### Grounds 1 Through 4

Grounds 1 through 4 allege assorted constitutional defects in
the sentencing requirements for "crack" that consistently have been
rejected by the Fourth Circuit.[1]   The Fourth Circuit, on many

---

[1]   On appeal, petitioner also asserted that the district court erred in
sentencing him under the guidelines for "crack," arguing that the term "cocaine
base" is synonymous with "cocaine," and that the rule of lenity required
application of the lesser penalty. United States v. Hamilton, No. 94-5593, slip
op. at 6 (4th Cir. Apr. 20, 1995). Insofar as this § 2255 motion raises these
same claims, they are now barred because they were fully considered on direct
review. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976), cert.
(continued...)

occasions, upheld the disparity in the sentencing guidelines between "crack" and cocaine. United States v. Johnson, 54 F.3d 1150 (4th Cir.), cert. denied, 516 U.S. 903, 116 S. Ct. 266, 133 L. Ed. 2d 188 (1995); United States v. D'Anjou, 16 F.3d 604 (4th Cir.), cert. denied, 512 U.S. 1242, 114 S. Ct. 2754, 129 L. Ed. 2d 871 (1994); United States v. Bynum, 3 F.3d 769 (4th Cir. 1993), cert. denied, 510 U.S. 1132, 114 S. Ct. 1105, 127 L. Ed. 2d 416 (1994). The Fourth Circuit also found that the sentencing disproportion between cocaine and "crack" in 28 U.S.C. § 841 did not violate either the Due Process Clause or the Equal Protection Clause of the Fifth Amendment. United States v. Fisher, 58 F.3d 96, 99-100 (4th Cir.) (citing other cases supporting constitutionality of the law), cert. denied, 516 U.S. 927, 116 S. Ct. 329, 133 L. Ed. 2d 229 (1995).

Insofar as petitioner objects to his sentencing because there was no scientific, laboratory proof that the identity of the substance was "crack," containing sodium bicarbonate, or conforming to any particular chemical definition, that also is without merit under cases in this Circuit. The Fourth Circuit has not required that expert testimony be used to establish the chemical identity of contraband, holding that it can be shown by ordinary, real and testimonial evidence. United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992) (stating that courts do not require scientific certainty in determining the chemical identity of an alleged

---

[1](...continued)
denied, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976).

controlled substance); <u>United States v. Scott</u>, 725 F.2d 43, 45 (4th Cir. 1984) (affirming conviction on basis of lay testimony of users and others, that substance was cocaine, without analysis of samples, chemical analysis, or experts). Direct or hearsay testimony of lay witnesses relating to the amounts attributable to a defendant can provide reliable evidence of quantity. <u>United States v. Sampson</u>, 140 F.3d 585 (4th Cir. 1998). Petitioner has not alleged facts that would demonstrate that the district court's findings at sentencing were clearly erroneous. <u>United States v. Fisher</u>, 58 F.3d at 100. Therefore, all of these claims in Grounds 1 through 4 are meritless and should be dismissed.

### Ground 5

Finally, petitioner's assorted allegations in Ground Five purport to establish that his counsel was ineffective. In order to prove ineffective assistance of counsel, petitioner must establish that his attorney's performance fell below a reasonable standard for defense attorneys and that he was prejudiced by this performance. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The proper standard for prejudice requires a showing that but for the attorney's errors the result of the proceedings probably would have been different. Counsel is strongly presumed to offer effective assistance, and a court should apply a "heavy measure of deference" to an attorney's decisions. <u>Id.</u> at 690-91. The court need not determine whether counsel's performance was objectively unreasonable where petitioner cannot show prejudice. <u>Id.</u> at 697.

The problem with all of petitioner's allegations of ineffectiveness of counsel is that, while they specify many particular acts or omissions of counsel, he does not explain their significance, or even their relevance, to the outcome of his sentencing, and, therefore, does not allege any prejudice to his case. He mainly claims Special Agent Austin presented false evidence in the complaint, before the grand jury, and some at trial. However, the claims are conclusory and pertain to minor matters. He claims the chief witness against him did not tell the truth and could have been more effectively impeached. He claims his counsel would not let him testify but petitioner never brought that to the attention of the court, even at resentencing. The evidence against him was overwhelming. Ground Five is, therefore, also without merit and should be dismissed.

**IT IS THEREFORE RECOMMENDED** that petitioner's motion to vacate, set aside or correct sentence (Docket No. 100) be **DENIED** and that Judgment be entered dismissing this action.

United States Magistrate Judge

July 30, 1998

-10-

ATT #2

(PETITIONERS OBJECTIONS TO MAGISTRATE'S RECOMMENDATIONS)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HAMILTON, Michael                    :    Dkt.  No. 1:97CV1296
                                          Lwr. Dkt. 1:94CR66-1
                  (Petitioner)       :

                                     :
v.
U N I T E D   S T A T E S            :

                  (Respondent)

**PETITIONER'S WRITTEN OBJECTIONS
TO MAGISTRATE'S RECOMMENDATIONS**

COMES NOW, the aforesaid Petitioner pro-se, to move this Honorable Court

in prosecuting his **Written Objections to the Magistrate's Recommendations** (Doc.

120),  pursuant to Rule 72(b) of the Federal Rules of Civil Procedure (Fed.R.Civ.

P.).

The Magistrate has determined that, under the "particular circumstances of

this case where the **motion was converted by order of the court** [and] **not by**

**application of the petitioner**, and where the **court assured petitioner he could**

**file another Section 2255 motion**, the petitioner should not be held responsible."

(Doc. 120, p. 6).

Petitioner further adopts the Magistrate's recommendation that this motion

should either be "considered as an **amendment** or [a] **continuation** of the **original**

**motion** and not a second or successive motion."  Doc. 120, p. 5.

The Magistrate conceded that Petitioner was adjudged, appeal taken and

affirmed therefrom, filed a Rule 35(a) the court construed as 2255 motion, that

has led to this filing allowed by the resentencing court. Cf. Doc. 120, pp. 1,

and 5-6;  with Doc. 100, ¶¶ 9(a) to (c) and 11, p. 3.

Petitioner **does object** to the Magistrate's contention that Petitioner has

filed after 24 April 96's effective date for the Antiterrorism Effective Death

Penalty Act (AEDPA), where that contention is in conflict with the Magistrate's

recommendations.  Doc. 120, pp. 1, compare with 4.

The Rule 35(a) motion was filed on 19 June 95, remained pending until relief was granted on 16 May 96 that led to a resentencing on 6 August 96.  This demon-strate's that Petitioner's action was pending before 24 April 96.

Whether adopting the **amendment** or **continuation** option given by the Court by the Magistrate under the circumstances of this case,  the AEDPA restrictions for this non-capital case does not apply under the plain language of **Lindh** v. **Murphy**, 138 L.Ed.2d 481, 486 (1997).

This objection preserves the first four constitutional issues that are not firmly rooted in the ineffective assistance denial by the **novel** issue status.

## § I.    MISREPRESENTATION OBJECTIONS

### A.    Crack As A Controlled Substance

1.  The Magistrate misrepresents Ground One by stating Petitioner's position is one on **lenity**, when it is specifically shown that Petitioner contested **crack** as not being scheduled as a controlled substance as is required before a guilty finding can be affirmed. Cf. Doc. 100, ¶ 12A. 1-2, 5-6, 10-11, and 13, pp. 3-5a(2);  and Doc. 101, §§ IA. 2-4, 6-8, pp. 1-2.

2.  Petitioner **objects** to the Magistrate's interference of Ground One being that on **lenity**, and that the district court erred at sentencing Petitioner under the **crack** guidelines because **cocaine base** is synonymous with **cocaine**. Doc. 120, p. 7 n. 1 .

3.  Petitioner's position in Ground One was that he was convicted for possessing a controlled substance not scheduled as controlled within 21 U.S.C. § 812 (Doc. 100, ¶ 12A. 1-2, p. 3), that absent such a Schedule controlled substance, the district court lacked jurisdiction to prosecute (Doc. 100, ¶ 12A.5, p. 5a(1)), and was error. Id., ¶ 12A. 10, p. 5a(2); Doc. 101, § IA. 4, pp. 1-2.

4.  The record clearly reflects that Petitioner's Ground One was **not**

one of **lenity**, and it was the Court and not Petitioner who have determined that **cocaine base** and **cocaine** are synonymous. **United States** v. **Fisher**, 58 F.3d 96, 99 (4th Cir.) cert. denied, 516 U.S. 927, 133 L.Ed.1d 229 (1995); **United States** v. **Booker**, 70 F.3d 488, 490 (7th cir. 1995); and **United States** v. **Ford**, 994 F.Supp. 401, 402 (D.C. Cir. 1998).

5. The other portion of Ground One totally ignored by the Magistrate in his recommendations, is the fact that Petitioner showed of Congress delegating the Attorney General as the proper person to initiate a forum to Schedule a drug for control. Doc. 101, § IA.2-3, p. 1.

6. Neither the proceedings required under 21 U.S.C. § 811 initiated by the Attorney General, or adding cocaine base as its "official name" given by Congress or its common name of **crack** as required by 21 U.S.C. § 812(c), have been done yet. Doc. 120, p. 8; and Doc. 101 ¶ IA.4, 10 and 15, pp. 1-4.

7. Petitioner also **objects** to the Magistrate's falseness that Ground One was raised in direct appeal with Fifth Amendment equal protections denial, and is now barred here. Doc. 120, p. 7 n. 1. Petitioner refutes this Magistrate' falsity by relying on the Fourth Circuit Court of Appeals decision. **United States** v. **Hamilton**, Dkt. # 94-5593, p. 4.

8. In this action, Petitioner has raised due process and equal protection denials built upon a racial foundation of Ground Two, (Doc. 100, ¶ 12B.7, p. 5b), but not in Ground One as the Magistrate infers.

9. The next **objection** centers upon the Magistrate's belief that no **laboratory** proof is needed to identify "**crack**, containing sodium bicarbonate, or conforming to any particular chemical definition." Doc. 120, p. 8. The U.S. Sentencing Guidelines (USSG) and Congress disagree. USSG 2D1.1, emphasis added.

10. The 1993 amendment to USSG 2D1.1 makes it clear that the **particular chemical definition** Congress targeted for the enhanced sentencing was **base** prepared

- 3 -

using **cocaine hydrochloride** and **sodium bicarbonate** that becomes a "rock-like" substance. USSG 2D1.1; Doc. 100, ¶ 12A.7-8, p. 5a(1).

11.    Though the Magistrate claimed the law of the Fourth Circuit did not follow this prerequisite citing law prior to the amendment's enactment, Doc. 120, pp. 8-9; the Fourth Circuit courts must apply the Law "**binding on all other panels**" as Congress dictates. Cf. **Mu'Min** v. **Pruitt**, 125 F.3d 192, 194 n.2 (4th Cir. 1997); and **United States** v. **James**, 78 F.3d 851, 855 (3rd Cir. 1995), cert. denied, 136 L.Ed.2d 77 (1996); with USSG 2D1.1 .

12.    The important of Scheduling drugs with derivatives under other Schedules are best taken from the actual Schedule in use under 21 U.S.C. § 812. Petitioner will demonstrate just one of the many variables, that of lysergic acid under Schedule III.

13.    While **lysergic acid** serves as the base for **lysergic acid diethyla-mide** (LSD) like **cocaine hydrochloride** is for **crack**, lysergic acid is listed in Schedule III while its destructive derivative is assigned Schedule I. See 21 U.S.C. § 812, Schedules I(c)(9) and III(b)(4).

14.    The Attorney General initiated proceedings as required under 21 U.S.C. § 811 to get LSD Scheduled as a Schedule I drug, though its base was listed in Schedule III. Cocaine is a Schedule II drug, and proceedings to add **cocaine base** or **crack** should be done for a drug under Schedule I for appropriate enhanced punishment.

15.    Petitioner was indicted and convicted for possessing a controlled substance called **cocaine base** or **crack**, though neither is listed in any Schedule as required, procedurally required and then listed in a Schedule. See Doc. 100, ¶ 4, p. 2; Doc. 101 ¶ IA.4, and 15, pp. 1 and 3; 21 U.S.C. §§ 802(6), 811, and 812 respectively.

16.    As Petitioner not being held responsible for what a court orders,

neither should he be held accountable for what Congress delegated to the Attorney General but she failed to do so. Doc. 101, supra.

## B. **Bill Of Attainer Objections**

1.  Petitioner first **objects** to the Magistrate's general synopsis that "Grounds 1 through 4 allege assorted constitutional defects in the sentence requirement for **'crack'** that consistently have been rejected by the Fourth Circuit." Doc. 120, p. 7, footnote omitted.

2.  The second **objection** is the Magistrate's deceipt to this Court that the Bill of Attainder issue raised in Ground Two was raised on the Petitioner's direct appeal. Doc. 120, p. 7 n. 1.  Again, Petitioner turns to the direct appeal decision by the Fourth Circuit in this case, no such error occurred to be raised. **Hamilton**, supra.

3.  Petitioner showed the three (3) prerequisites to determine a Bill of Attainder violation. Doc. 101 § IIA. 2, p. 5.  The **imposed punishment, particular classification not dependent on race,** and the **congruence of Equal Protection** were explained and shown. Id.

4.  The **particular classification** was based on the minority races, that the House of Representatives did not attempt to conceal. Doc. 100, ¶ 12B. 1, 4-6, pp. 5-5b;  Doc. 102, § IIA. 4-8, pp. 6-7;  and Doc. 102, ¶ 5, p. 2.

5.  The **imposed punishment** was the drastic 100:1 ratio, and the **congruence** of Equal protection shielded under the Fifth Amendment that allegedly is in place for judicial protection that is not being realized. Doc. 100, ¶ 12B. 7, p. 5b;  Doc. 101, § IIA. 9, p. 7;  and Doc. 102.

6.  Congress' classification of **crack** was passed to clean up **minority neighborhoods** that are predominately of black origin, punishing those that are caught with long sentences to keep dealers off the streets to benefit minority American neighborhoods.  Doc. 101, ¶ IIA. 4, 7-11, 13-14, pp. 6-8.

7.  The Magistrate failed to recognize that laws created to **benefit** a particular race as specified by the legislative hearings, though motivated by **good intentions,** cannot get refuge from the Constitution **on the basis of race.** **Adarand Constitution, Inc.** v. **Pena**, 132 L.Ed.2d 158, 179-80, 115 S.Ct. 2097 (1995); Doc. 101 § IIB. 4-9, pp. 6-7.

8.  Petitioner's position was that whether to benefit a particular race on a particular program as legislators spoke of above, is contrary to the Constitution. **Shaw** v. **Reno,** 109 U.S. 630, 125 L.Ed.2d 511, 515, 113 S.Ct. 2816 (1993); and **Pena,** supra. Therefore, Petitioner's Ground Two should be granted.

## C.  Ground Three and Four Objections

1.  Petitioner **objects** to the Magistrate's inferences that Ground Three on Separation of Powers was raised on direct appeal and barred here, is itself disputed by the unpublished decision in **Hamilton,** supra. Doc. 120, p. 7 and n. 1 .

2.  The Magistrate also eluded the **burden of proof** issue for **preponderence of the evidence,** and how the Congress invaded this once strictly Judicial function as provided by the Constitution to be separate from Legislative functions. Doc. 101, § IIB. 10, p. 10.

3.  The 1993 amendment of the 2D1.1 guideline relieves Respondent of his burden to prove a substance is the form of **cocaine base** made with sodium bicarbonate that can be smoked Congress itself targeted. Id.; Doc. 101, § IIB. 7-8, p. 9.

4.  The **amendment** came when the Sentencing Committee became aware of the inter-circuit conflict as to what **cocaine base** Congress intended to target for the sentence enhancement, drawing unto itself the power to punish by legislation what was once for the Judicial Branch exclusively. Doc. 101, § IIB. 10-14, pp. 10-11.

5.  Petitioner further **objects** that his Equal protection denial by preventing due process derives from the above particulars on legislation targeting to **benefit a race**,  remove the proof by a **preponderance of the evidence standard**, with judicial protections thereon that have been eluded here. Doc. 101 § IIA. 4-6, p. 6;  and § IIB. 7-14, pp. 9-11.

## § II.    INEFFECTIVE COUNSEL OBJECTIONS

1.  Petitioner next **objects** to the Magistrate's assertion that none of Ground's Five allegations  "explain their significance. . . nor allege prejudice," Doc. 120, p. 10; citing **Strickland** v. **washington**, 466 U.S. 668,  80 L.Ed.2d 674,  104 S.Ct. 2052 (1984).

2.  Though the Magistrate's paraphrases the two prong test enunciated in **Strickland**,  he detours away from its requirement for a showing of counsel's errors being so serious so as to deprive Petitioner of a fair trial,  of which Petitioner has complied. **Strickland**, at 687,  80 L.Ed.2d, at 693; Doc. 101, § III. 18-19, 22-24, 29, 34-38, pp. 15-19.

3.  Petitioner **objects** to the Magistrate's comments that the false evidence and testimony given by SA AUSTIN outlined by Petitioner is **conclusory** or pertain to **minor matters only** (Doc. 120, p. 10),  because nothing is minor where life and liberty are at issue in the United States.

4.  The prejudice Petitioner suffered is an indictment obtained upon false declarations by an agent,  that was otherwise unobtainable without the nexus of those false statements. Doc. 100, ¶ 1-4, p. 6c(1); Doc. 101, § III. 5-7, p. 13.

5.  The agent telling the grand jury Petitioner was on parole for drugs when the instant case occurred,  knowing same to be false, in addition to having an alias and two local phone numbers to further that business of drugs, were not minor. Id.

- 7 -

6.  Petitioner first showed how those false declarations made to the grand jury later reputed in part by the record or Ms. WICK, were what was used to influence the grand jury's **decision making body**. Doc. 101, § III. 6-7, p. 13.

7.  The Magistrate's claim of Petitioner's **claims** that the **chief witness** against him did not tell the truth, where the record and attorney notes prove Petitioner is right but the attorney did not exploit as a Sixth Amendment guarantee would encompass, meets the requirements of **Strickland**, at 687, 80 L.Ed.2d, at 693.

8.  False testimony or evidence given a trial court by a prosecutor is not harmless when used to procure a guilty finding as has been done in the instant case, is neither **conclusory** or **minor** so Petitioner's Ground Five issue regarding the above should be granted.

9.  Ms. WICK testified that she had been admitted on divers occasions to mental hospitals after unsuccessful suicide attempts, yet refuted taking psychotropic medications usually mandatory upon admission for such behavior with a history of substance abuse classes. Doc. 101, § III. 20-21, 29, 37-39, pp. 16-17 and 19-20.

10. When the Respondent's chief and only witness, makes such denials while admitting she had escorted two men carrying drugs to North Carolina about one month prior to her arrest, is not a **conclusory** or is it **miner** in a criminal trial.

11. Petitioner's counsel did not provide him with the adverserial testing guaranteed him by the Sixth Amendment, had a defense available he did not present, failed to call witnesses available that would have discredited or refuted completely Ms. WICK's assertions, and was therefore ineffective as counsel at trial that **Strickland** requires. Doc. 101, § III. 17-23, 27-29, 31-39, pp. 15-20.

- 8 -

12.  Petitioner also **objects** to the Magistrate's inferences he did not bring up the point of his counsel refusing to let him testify at trial during resentencing,  Petitioner was precluded as a conflict of interest would result that was intended to be raised here as Petitioner did. Doc. 120, p. 10; and Doc. 101 § III. 39, p. 19.

13.  Petitioner pointed out in his legal argument argument, and reiterates it here,  that his defense counsel's cumulative errors "so infected the entire trial that the resulting conviction violates due process," warranting habeas relief. Doc. 101, § III.

14.  Petitioner generally **objects** to the Magistrate's comment that while Petitioner's ineffective counsel allegations  "specify many particular acts or omissions of counsel, he does not explain their significance," or "relevance," or relevant prejudice. Doc. 120, p. 10.

15.  Petitioner **objects** to this on two grounds.  First, the Magistrate held Petitioner to a higher standard than attorneys;  and second,  made Petitioner format his brief and petition under a line requirement the Magistrate does not follow.  Lead by example. Doc. 120, p. 7 (has 29 lines and p. 2 has 32 lines).

16.  Petitioner was not allowed to use footnotes and single spacing due to local rules,  but his adversary Respondent and the Magistrate were allowed to single space and exceed line limits Petitioner could not.  This limit, prevented the freedom to enjoy the leisure of explaining specific errors.

WHEREFORE,  for the foregoing reasons,  Petitioner's 2255 motion should be granted.    This motion was mailed pursuant to **Houston** v. **Lack**, 487 U.S. 266 (1988).

Respectfully submitted,

Dated:  August 11, 1998

Michael Hamilton
17072-057
Box 1000
Lewisburg, PA. 17837-1000

ATT #3
NEWS ARTICLE FROM THE FLINT JOURNAL

OPINION 2

THE FLINT JOURNAL • MONDAY, SEPTEMBER 8, 19

# Crack laws were designed to save black communit[y]

## Affirmative action laws nearing collapse



WILLIAM
RASPBERRY

"**W**HEN you're up to your hips in alligators, it's hard to remember that your initial objective was to drain the swamp."

I think that's an old Cajun expression, and I'm not sure that its most accurate rendering includes the word "hips." But it does seem an apt way to think about the bitter controversy over the disparate sentencing for "crack" and powder cocaine.

The most troublesome of the alligators in the analogy is the fact that users and sellers of "crack" — overwhelmingly black — are far more likely to go to prison and to serve longer (mandatory) terms than are users and sellers of cocaine in its powder form, a group far likelier to comprise whites.

The key reason for the disparity: a seller of a mere 5 grams of smokable crack to the same sentence — a mandatory five years — as one caught selling 500 grams of powdered cocaine.

That law is one reason for the dismal report of a week ago that just shy of half of all young black men in Washington

(and no doubt similar ratios elsewhere) are enmeshed in the criminal justice system — in jail or prison, on parole or probation, awaiting trial or sentencing, or being sought on a warrant, many of them on crack-related charges.

The comparable figure for young white men is about 5 percent.

If you focus only on the alligators, as many of the more vociferous advocates of cocaine sentencing reform are doing, it may be easy to miss something very "interesting" to miss something very

When the federal legislation was passed back in 1988, it was with a specific objective, to drain a crack-infested swamp that threatened to destroy the black inner cities of America (and which threatened, like other ghetto-spawned problems, to spread into the surrounding cities and suburbs).

It was because crack was believed to be especially menacing that the special legislation was passed.

Cocaine, the then-existing consensus had it, may have been bad and illegal. But crack was something new under the

dangerous drug so we must take extraordinary steps to combat it ..."

I don't mean to suggest that Shaw's proposal (which passed) had no opponents. Rep. Charles Rangel, D-N.Y., voted against it, but because the prosecutors he talked to didn't want to — ratio disparity in the triggering amounts of powder vs. cocaine. She even acknowledges, along with many other observers, that the menace of crack may have been exaggerated ...

Lisle G. Rep. E. Clay Shaw, R-Fla., explains the rationale behind his 1988 legislation:

"By nature, crack is a drug dealer's dream. The major target market for crack takers has been our younger. ... Crack dealers have virtually memorized the 1986 drug penalties, and they know if they carry less than 5 gra of crack, they will not be subject to tough 1986 penalties. ...

"We m not let the drug dealers outsm us. Vote for my amendment in order to ip the pressure on the crack dealers Iand criticizing our youngsters, ack is an extraordinarily

fewer whites than blacks were vi crack market turf wars. Fewer whit were robbed to finance crack purch From foster homes to emergency ro the victims were sel

Hammerle does not defend the to-1 ratio disparity in the triggering amounts of powder vs. cocaine. She even acknowledges, along with many other observers, that the menace of crack may have been exaggerated at time of the now-controversial legislation. She may even want a new look whole thing. She grants, as of l, that

The relevant point is that it much too late to draw a new look powdered cocaine were neither racist. The guidelines may have been poorly designed and But they were not designed as an on the black community but as an eff

Isn't it possible to deal with an unanticipated infestation of all igat without questioning the motives of tho who at least tried to drain the swamp?

*Washington Post Writers Group*

# Affirmative action laws nearing collapse



**JAMES KILPATRICK**

This pleasant prospect emerges from a decision of the U.S. Court of Appeals for the District of Columbia Circuit in the case of Dynalantic Corp. in California the state has begun to enforce the sweeping provisions of Proposition 209, the constitutional amendment barring preferential treatment in all state and local functions.

Twenty-six states are moving to emulate California's example. Voters in Houston are expected to impose a municipal fair-play ordinance in November. We judge slowly toward equal protection after all.

Inconsistencies abound. Let me offer two similarities. In 1995 the company wanted to bid on a simulator for the Marine Corps' "Huey" helicopter, but it was frozen out. The government's "8(a) program" the contract has been reserved for "socially and economically disadvantaged" companies only. The program effectively bars white-owned companies from bidding on a certain percentage of federal contracts.

The immediate question before the Circuit Court was whether Dynalantic had standing to sue. Over a testy dissent by Chief Judge Harry T. Edwards, Judges Laurence H. Silberman and Stephen F. Williams agreed not only that the corporation may proceed with its suit but also that the 8(a) program is likely to be held unconstitutional in whole or in part. (Edwards thought their reasoning "absurd," but it seems sound to me.)

For those of us who believe that the

I passed almost unnoticed in the news, but on June 10 the cause of affirmative action suffered one more blow in the courts. The whole wobbly structure of preferential treatment now approaches collapse.

Constitution should be color-blind, except in cases to remedy individual acts of racial discrimination, this was good news.

The even better news, also overlooked by the press, is that the government will take no appeal from the Dynalantic decision. This case is now on the books, and because it comes from the influential District of Columbia Circuit it will carry considerable clout.

Governmental programs of racial preference are programs of racial discrimination. No one can seriously deny it, but the Supreme Court has waffled for 25 years on the question of how much discrimination is permissible.

In 1978, in the famous Bakke case, the court agreed 5-4 that race could be a factor in college admissions.

In 1980, in the Fullilove case, a badly splintered court held that set-asides for minority business enterprises were "remedial" and hence acceptable.

In 1990, in the Metro Broadcasting case, the court split 5-4 in ruling that the Federal Communications Commission could give preferential treatment to minority applicants for broadcast licenses. This was not discrimination, said the court — it was, well, benign discrimination, and to

the coast liberal bloc, benign discrimination is constitutional.

The tide began to turn in 1989, when the court had thrown out a racial set-aside program in Richmond, Va. In 1993 the court struck down a similar program in Jacksonville, Fla. In 1995, the landmark Adarand case, in Colorado, the court barred set-asides on federal highway programs — and the set specifically overruled the 1990 opinion in Metro Broadcasting.

Now comes the Dynalantic case in the District of Columbia. The precedent of Bakke in higher education no longer controls, Federal and local set-asides are tottering. The law is at least where any sweeping edges of government must survive strict judicial scrutiny. Sounds right to me.

Justice Antonin Scalia expressed his own view in a powerful concurring opinion in the Adarand case seven years ago. "In my view, government can never have a 'compelling interest' in discriminating on the basis of race in order to 'make up' for past racial discrimination in the opposite direction," wrote Scalia. "Individuals who have been wronged by unlawful racial discrimination should be made whole, but under our Constitution there can be no such thing as a creditor or a debtor race ... In the eyes of government, we are just one race here. It is American."

Justice Clarence Thomas added his open, trenchant observation. "Racial classifications," he said, "whether 'benign' or oppressive, are not free from discrimination, plain and simple." ... "In my mind, government-sponsored racial discrimination based on benevolent prejudice is just as noxious as discrimination inspired by malicious prejudice."

Universal Press Syndicate
4900 Main St.
Kansas City, Mo 64112

---

**DALE CARNEGIE TRAINING®**

**DEVELOP 5 CRITICAL SUCCESS FACTORS**
* **MORE SELF-CONFIDENCE**
* **CLEAR & CONVINCING COMMUNICATION**
* **INTERPERSONAL (PEOPLE) SKILLS**
* **LEADING AND INSPIRING OTHERS**
* **POSITIVE ATTITUDE & CONTROLLING STRES**

*September*
**DALE CARNEGIE COURSE®**
Now Forming in Flint.

**CALL TODAY**
**800-968-7760**
FOR MORE INFORMATION

Presented by: Handler & Associates
Training Leaders For 30 Years

http://www.dale-carnegie.com

# Women don't have to emulate male image



**WIDE AWAKE CLUB**

From the desk of: *Aunt Judy*

Winky and I are back from our summer vacation.

ATT # 4

(PETITIONER'S FOURTH CIRCUIT COURT OF APPEALS OPINION)

UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

MICHAEL HAMILTON, a/k/a Stacy,
a/k/a James Jones,
          *Defendant-Appellant.*

No. 94-5593

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
Frank W. Bullock, Jr., Chief District Judge.
(CR-94-66)

Submitted: March 31, 1995

Decided: April 20, 1995

Before MURNAGHAN, HAMILTON, and MICHAEL,
Circuit Judges.

___

Affirmed by unpublished per curiam opinion.

___

## COUNSEL

William E. Martin, Federal Public Defender, Gregory Davis, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr., United States Attorney, David B. Smith, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

2                              UNITED STATES v. HAMILTON

Unpublished opinions are not binding precedent in this circuit. See
I.O.P. 36.5 and 36.6.

---

## OPINION

PER CURIAM:

Appellant Michael Hamilton appeals his conviction and sentence
for violations of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(A) (West 1981 &
Supp. 1994), and 18 U.S.C. § 2 (1988). Finding no error, we affirm.

Hamilton and co-defendant Lynn Marie Wick were charged in a
one-count indictment with possessing with intent to distribute 116
grams of cocaine base ("crack").[1] Hamilton pled not guilty. A jury
convicted him of the charges. The district court sentenced Hamilton
to two hundred months imprisonment, five years supervised release,
and a special assessment of $50.

The facts surrounding this case are relatively straightforward.
Wick, Hamilton's co-defendant, was the Government's chief witness.
Wick met Hamilton, whom she knew as "Stacy," in February 1994 in
Brooklyn, New York. Wick was staying with Carla Smith when she
met Hamilton. Smith and Hamilton have a child together. Several
days after meeting Wick, Hamilton inquired about her financial situa-
tion. Wick told Hamilton she was unemployed. Several days later,
Hamilton asked Wick to carry drugs for him to Durham, North Caro-
lina, in exchange for $300 or $400. Wick agreed.

Hamilton sent Wick to Calendar Travel in Brooklyn to purchase
two Amtrak tickets. Hamilton paid for both tickets; one was in Wick's
name and the other was in the name of James Jones. Hamilton told
Wick that she "wouldn't be confronted or be looked upon with suspi-
cion."

Around 4:00 a.m. on February 24, 1994, Hamilton and another
young man came to Smith's apartment and gave Wick a bag contain-

---

[1]Wick is not a party to this appeal.

ing the crack. Wick placed the drugs into a gray make-up bag with some clothing. Hamilton, Wick, and the young man then drove to the train terminal. While driving to the terminal, Hamilton told Wick that they would sit separately on the train to Durham. At Hamilton's direction, the young man in the car wrote down the address, telephone number, and name of a contact person in Durham on Wick's ticket.[2]

When the train arrived in Durham, two detectives approached Hamilton shortly after he emerged from the train. The detectives identified themselves and asked Hamilton if he would speak with them. Hamilton identified himself as James Jones and showed the men his train ticket in that name. One detective asked Hamilton if he had any narcotics or weapons on his person, and Hamilton replied that he did not. The detective asked whether Hamilton would consent to a search of his person; Hamilton consented. The detectives searched Hamilton but found no weapons or narcotics. Hamilton was allowed to leave the train station.

Meanwhile, Wick emerged from the train and carried the gray bag to a pay phone. She dialed the phone number on her ticket. No one answered. A police officer approached and asked to see her ticket and identification. Wick ultimately consented to a search of her bag. Wick identified Hamilton as the owner of the drugs and described his clothing to the police. During their transfer from Greensboro to Winston-Salem for a court appearance, Hamilton instructed Wick not to tell anyone that she knew him or that the drugs belonged to him. Hamilton promised to pay Wick $5,000.

The next Government witness was Andre Holman. Holman met Hamilton, whom he also knew as "Stacy," after his January 1994 release from prison. In February 1994, Holman went to Durham because of a family member's illness. Holman stayed with his cousin, Olympia Ann Hayes, at 143-L Commerce Place in Durham. The phone number at that address is 682-7577. Hamilton called Holman at that number on February 21, 1994, and stated that he was coming to visit and asked for directions and the address.

---

[2]The train ticket, which was the Government's first exhibit, contained the following information: "143 Commerce, Apartment L, Ann, 682-7577."

4                       UNITED STATES V. HAMILTON

On February 24, Holman saw Hamilton approach the apartment from the train station, dressed in an army jacket. Hamilton told Holman about his encounter with officers at the train station. While the two men were walking toward the train station, they were stopped by the police, and Hamilton was arrested.

Detective Bruce Black testified that he was working drug interdiction at the Durham Amtrak station on February 24, 1994, when he observed Wick at a pay phone. During inquiry by Black and Detective Milton Austin, Wick consented to a search of her bag, which contained crack cocaine. In her post arrest interview, Wick admitted her involvement and that of "Stacy."

Finally, the Government presented the testimony of Detective Austin. Austin stated that he observed Hamilton emerge from the train. Austin approached Hamilton near an exit. Hamilton identified himself as James Jones and provided a train ticket with that name on it. Hamilton consented to a search of his person for drugs or weapons and then left the area.

Later, Austin approached Wick and continued his interdiction duties. Wick admitted carrying drugs, consented to a search of her bag, and stated "she was bringing the narcotics for the young man that we spoke to at the bottom of the steps, with the green army jacket." Wick identified the man as "Stacy." The writing on Wick's ticket revealed an address of 143 Commerce Street, Apartment L. The officers drove toward 143 Commerce and saw Hamilton and Holman walking toward the Amtrak station. Hamilton was arrested based on Wick's statements and the drugs recovered from her bag.

The Government rested its case, and the defense moved for judgment of acquittal. The district court denied the motion. Hamilton was sentenced two months later, and timely appealed his conviction and sentence.

Hamilton assigns two errors on appeal: (1) that the district court erred in denying his motion for acquittal; and (2) that the district court erred in sentencing him under the United States Sentencing Guidelines provisions for crack cocaine.

We will not overturn a verdict if there is substantial evidence, taking the view most favorable to the government, to support the finding of guilt. *Glasser v. United States*, 315 U.S. 60, 80 (1942). The question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The uncorroborated testimony of an accomplice may be sufficient to sustain a guilty verdict. *United States v. Burnes*, 990 F.2d 1426, 1439 (4th Cir.), *cert. denied*, 61 U.S.L.W. 3819 (U.S. 1993); *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984), *cert. denied*, 469 U.S. 1217 (1985).

Here, the Government was required to prove that Hamilton knowingly possessed a controlled substance with the intent to distribute or manufacture. *United States v. Crockett*, 813 F.2d 1310, 1316 (4th Cir.), *cert. denied*, 484 U.S. 834 (1987). Possession may be actual or constructive and may be joint. *United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985).

To establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed. *United States v. Blue*, 957 F.2d 106 (4th Cir. 1992). Constructive possession may be shown by direct or circumstantial evidence. *United States v. Laughman*, 618 F.2d 1067, 1077 (4th Cir.), *cert. denied*, 447 U.S. 925 (1980). Possession of a large amount of drugs among several people working together may be sufficient to show that each has constructive possession. *United States v. Watkins*, 662 F.2d 1090, 1097-98 (4th Cir. 1981), *cert. denied*, 455 U.S. 989 (1982). A defendant's intent may be inferred from quantities too large for personal consumption. *United States v. Nelson*, 6 F.3d 1049, 1053 (4th Cir. 1993), *cert. denied*, 62 U.S.L.W. 3792 (U.S. 1994). Moreover, a conviction for aiding and abetting pursuant to 18 U.S.C. § 2 requires only a defendant's participation in some stage of the offense with knowledge of the result and the intent to bring about that result. *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983), *cert. denied*, 465 U.S. 1028 (1984).

The evidence adduced at trial established that Hamilton recruited Wick as a drug courier. Hamilton provided the money for Wick to purchase her train ticket to Durham. Hamilton also gave Wick the

6                    UNITED STATES v. HAMILTON

drugs to be transported and the name, address, and telephone number
of the person she was to contact upon her arrival in Durham. Hamil-
ton accompanied Wick on the train ride to Durham, although they did
not sit together. Finally, after their arrests, Hamilton offered Wick
$5,000 if she would not say that the drugs belonged to him.

Viewing that evidence in the light most favorable to the Govern-
ment, we find that a rational trier of fact could have found the ele-
ments of the crimes charged beyond a reasonable doubt. Accordingly,
we affirm the district court's order denying Hamilton's motion for
acquittal.

Hamilton next asserts that the district court erred at sentencing by
using the heightened statutory penalty and sentencing guideline for
"cocaine base." Hamilton urges that because the term "cocaine base"
is synonymous with "cocaine," the rule of lenity requires the applica-
tion of the lesser penalty. We disagree.

The statute at issue here, 21 U.S.C.A. § 841(b), provides an explicit
penalty distinction between cocaine and cocaine base. The penalty
distinction is also reflected in the United States Sentencing Commis-
sion, *Guidelines Manual*, § 2D1.1 (Nov. 1993). Moreover, we have
recognized that cocaine base, as defined in the statute, is a specific
form of cocaine. *United States v. Pinto*, 905 F.2d 47, 49 (4th Cir.
1990). Cocaine base has a specific definition in law. *Id.*; U.S.S.G.
§ 2D1.1.

Hamilton relies on *United States v. Davis*, 864 F. Supp. 1303 (N.D.
Ga. 1994), to support his contention that the rule of lenity applies here
and requires that he be sentenced under the lesser penalties for
cocaine rather than cocaine base. In *Davis*, a federal district court in
Georgia held that there is no pharmacological difference between
cocaine and cocaine base. Accordingly, because the court found that
a statutory ambiguity existed, the court applied the rule of lenity.
*Davis* is not controlling precedent in this Court. Furthermore, our
decision in *Pinto* established that cocaine base and cocaine are chemi-
cally and definitionally distinct for punishment purposes under 21
U.S.C.A. § 841(b). To apply the rule of lenity, there must first be a
statutory ambiguity. *Chapman v. United States*, 500 U.S. 453 (1991).

Because there is no statutory ambiguity in § 841(b), the rule of lenity does not apply in this case.

Accordingly, we affirm Hamilton's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

*AFFIRMED*

ATT #5.

Prosecutor's Opposition Motion To Vacate

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY: CRIMINAL TERM
------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,  :
                                      :
                        Respondent,   :   AFFIRMATION IN OPPOSITION
                                      :   TO MOTION TO VACATE THE
              - against -             :   JUDGMENT
                                      :
                                      :
MICHAEL HAMILTON,                     :   Kings County
                                      :   Indictment Number
                                      :   14649/89
                        Defendant.    :
                                      :
------------------------------------X

THOMAS M. ROSS, an attorney admitted to practice law in the State of New York and an Assistant District Attorney in Kings County, affirms the following under the penalty of perjury:

1.    I submit this affirmation in opposition to defendant's motion pursuant to C.P.L. § 440.10 to vacate the judgment of conviction.   I affirm the following statements to be true upon information and belief based on the records and files of the Kings County District Attorney's Office.

2.    On October 10, 1989, at 1:30 p.m., inside the Times Square Store at 2750 Linden Boulevard in Brooklyn, defendant and his co-defendant, Lamont McAlpin, broke a glass display with hammers and each took a handful of diamond jewelry.

3.    For this conduct, defendant and McAlpin were charged under Kings County Indictment Number 14649/89 with Grand Larceny in the Third Degree (P.L. § 155.35); Criminal Possession of Stolen Property in the Third Degree (P.L. § 165.50); Burglary in the Third Degree (P.L. § 140.20); and Criminal Mischief in the Third Degree (P.L. § 145.05).

4.   On March 5, 1990, after inspecting the grand jury minutes, the Court dismissed the burglary count because of insufficient evidence.

5   On March 27, 1991, McAlpin pled guilty before trial to Grand Larceny in the Third Degree.  He was subsequently adjudicated a youthful offender and sentenced to five years' probation.

6.   On April 16, 1991, in the middle of trial, the Court reevaluated the grand jury minutes, as per defendant's request. The Court then reduced the grand larceny count to Petit Larceny (P.L. § 155.25), the possession of stolen property count from third degree to fifth degree (P.L. § 165.40), and the mischief count from third degree to fourth degree (P.L. § 145.00[1]) on the ground that the evidence in the grand jury was insufficient to establish the value of the stolen property (see Minutes of Defendant's Plea, People's Exhibit A, at 3-7).  After the reduction, defendant pled guilty to Petit Larceny.  The Court promised a sentence of one year of jail and a recommendation to the Parole Board that the sentence run concurrent to any parole violation (People's Exhibit A, at 7-13).  As part of the bargain, the People agreed not to appeal the Court's decision to reduce the charges (People's Exhibit A, at 5).

7.   On May 7, 1991, the Court sentenced defendant as promised.

8.   Defendant did not appeal his conviction.

9.   By papers served December 13, 1995, defendant moves this Court for an order vacating the judgment of conviction, pursuant to Criminal Procedure Law § 440.10, on the ground that his plea was

2

involuntary.   Defendant claims that the plea was involuntary because the Court allegedly did not advise him of the rights that would be waived by pleading guilty and because the court's alleged participation in the plea negotiations coerced him into pleading guilty.

10.   Defendant's claim is procedurally barred because he has not sworn to the truth of his allegations, nor has he appeared before a notary public, hence, his papers are defective.   C.P.L. § 440.30(1).   In addition, defendant's claim is barred because he failed to raise this claim on appeal and the record contains sufficient facts by which defendant could have raised his claims on direct appeal.   C.P.L. § 440.10(2)(c).   In any event, defendant's claim is meritless because the record of defendant's plea contradicts his claim that the Court failed to apprise him of the rights he was waiving and contradicts his claim that the Court participated in the plea negotiations.   C.P.L. § 440.30(4)(d). Furthermore, the Court was not required to apprise defendant of any specific rights, except for the right to remain silent and the right to have a trial.   People v. Fiumefreddo, 82 N.Y.2d 536, 543 (1993).   In addition, the Court also was not prohibited from any participation in the plea negotiations.   People v. Davis, 54 A.D.2d 913, 915 (2d Dep't 1976).   The Court merely had ensure that defendant's plea was knowing and voluntary.

3

WHEREFORE, for the reasons set forth in this Affirmation and the accompanying Memorandum of Law, defendant's motion to vacate the judgment should be denied.

Dated:      Brooklyn, New York
            March 28, 1996

                                    Thomas M. Ross
                                    Assistant District Attorney
                                    (718) 250-2498

4

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY: CRIMINAL TERM
--------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK, :
                                     :
                        Respondent,  :
                                     : MEMORANDUM OF LAW
              - against -            :
                                     :
                                     :
MICHAEL HAMILTON,                    : Kings County
                                     : Indictment Number
                                     : 14649/89
                        Defendant.   :
                                     :
--------------------------------------X


                        ARGUMENT

          DEFENDANT'S MOTION SHOULD BE SUMMARILY DENIED
          BECAUSE HE HAS NOT SWORN TO THE TRUTH OF THE
          CLAIMS   IN   HIS   MOTION.    ADDITIONALLY,
          DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE
          THE RECORD WAS SUFFICIENT FOR HIS CLAIMS TO
          HAVE BEEN RAISED ON APPEAL AND BECAUSE THE
          RECORD CONTRADICTS HIS CLAIMS.  IN ANY EVENT,
          DEFENDANT'S CLAIMS ARE MERITLESS.

     Defendant claims that the judgment should be set aside because
his plea of guilty was not knowingly and voluntarily made.  The
plea was supposedly involuntary because the court did not apprise
him of the rights that would be waived by pleading guilty and
because the court's alleged participation in the plea negotiations
coerced him.  Defendant's motion should be summarily denied on
several grounds.

     First, a motion to vacate the judgment must contain "sworn
allegations" of the "existence or occurrence of facts" upon which
the motion is based.  C.P.L. § 440.30(1).  Accordingly, defendant's
moving papers are defective because he has not sworn to the truth

2

of his allegations nor has he appeared before a notary public. Defendant's motion must, therefore, be denied.

Second, defendant's motion must be denied because sufficient facts appeared on the record for defendant to have raised his claims on appeal, but defendant unjustifiably failed to do so.[1] C.P.L. § 440.10(2)(c); People v. Cooks, 67 N.Y.2d 100 (1986). The record showed the extent of the Court's participation in the plea negotiations. Although two off-the-record sidebar conferences were held (Exhibit A, at 2, 6), apparently without defendant's presence, defendant makes no allegation that whatever may have been discussed there affected his decision to plead guilty. Therefore, defendant's claim is based upon matters entirely on-the-record, which dictates that defendant should have raised his claim on direct appeal. Because defendant makes no attempt to explain his failure to appeal his conviction, defendant's motion must be denied.

Third, defendant's motion should be denied because the record contradicts defendant's claims and defendant does not show a reasonable possibility that his claims are true. C.P.L. § 440.30(4)(d). Although defendant alleges that the court did not advise him of the rights he was waiving by pleading guilty, the

---

[1]Defendant attaches the minutes of his sentencing on May 7, 1991 to support his claims. However, defendant's sentencing was three weeks after having pled guilty, so the negotiations and the waiver of rights had already taken place. The sentencing minutes consequently are not the minutes germane to his motion. The minutes of the plea itself, on April 16, 1991, shows what negotiations took place and what rights were waived (see People's Exhibit A, attached herewith).

3

plea minutes show that the Court informed defendant that he was waiving his right to remain silent, to have a trial, to testify on his own behalf, to call witnesses on his own behalf, and to have the prosecution prove guilt beyond a reasonable doubt. Defendant acknowledged that he understood those rights and that he was waiving them (People's Exhibit A, at 8-9). The record also contradicts defendant's allegation that the Court participated in the plea negotiations. The Court did not address defendant directly until after defense counsel informed the Court of defendant's intention to withdraw his plea of not guilty. Although defense counsel stated that defendant's decision to plead guilty was based upon conferences he had with the Court and upon discussions he had with defendant (People's Exhibit A, at 5-8), defendant does not allege that the Court made threats during the conferences that were relayed to defendant by his defense counsel. Thus, the record indicates that the Court never discussed the plea with defendant. Furthermore, because defendant makes no showing of any reasonable possibility that his allegations are true, defendant's motion should be denied.

In any event, defendant's motion should be denied because his guilty plea was knowing and voluntary. First, the Court informed defendant of more rights than what was required. Second, even if the Court participated in the plea negotiations, as defendant alleges, the Court nevertheless did not coerce a guilty plea.

The determination of whether a defendant's guilty plea is voluntary, knowing, and intelligent is left to the "sound

discretion" of trial court to be "exercised in cases on an individual basis." People v. Fiumefreddo, 82 N.Y.2d 536, 543 (1993) (quoting People v. Nixon, 21 N.Y.2d 338, 353 [1967]). Although the record must affirmatively show that a defendant has "waived her [or his] constitutional privilege against self-incrimination and her [or his] rights to a jury trail and to be confronted by witnesses," the court is not required to follow any "uniform mandatory catechism of pleading defendants." Id. (citing People v. Harris, 61 N.Y.2d 9, 16 [1983]). Consequently, the Court need not enumerate specifically all of the rights which are waived by a guilty plea. People v. Day, 150 A.D.2d 595, 598 (2d Dep't 1989); People v. Buitrago, 125 A.D.2d 322 (2d Dep't 1986); People v. Riviezzo, 124 A.D.2d 837 (2d Dep't 1986); People v. Bostick, 124 A.D.2d 811 (2d Dep't 1986).

Here, the Court told defendant, "[Y]ou have a right to remain silent and have you (sic) a right to a trial by jury or judge, right?" Defendant answered, "Yes." The Court, thus, met the minimal requirement of informing defendant of his right to have a trial and to remain silent. Fiumefreddo, 82 N.Y.2d at 543. The Court, however, went beyond what was minimally required by informing defendant that he was waiving his right to testify on his own behalf, to call witnesses on his own behalf, and to have the prosecution prove guilt beyond a reasonable doubt. Moreover, the Court made sure that defendant understood those rights and that he was waiving them of his own free will (People's Exhibit A, at 8-9). Defendant does not specify what rights the Court should have

apprised him of nor does he mention which of those rights he would have been unwilling to waive.  Consequently, the Court adequately informed defendant of the rights he was waiving by pleading guilty.

Furthermore, at the time defendant was arrested for this crime, he had already been arrested at least eight times before (see Defendant's Criminal History, Exhibit B).  Defendant had pled guilty in at least two of those cases.  Because of defendant's experience in the criminal courts, defendant should have known the legal consequences of a guilty plea without the Court informing him.  Defendant's experience did not mean that the Court could dispense with advising him of his rights, but nevertheless, his experience was a factor in determining whether his plea was knowing and voluntary.  See People v. Saunders, 188 A.D.2d 1000 (2d Dep't 1992); People v. Corso, 183 A.D.2d 774 (2d Dep't 1992).  Accordingly, defendant's plea of guilty would have been knowing and voluntary even had the Court not informed him of all the rights being waived.

Additionally, assuming arguendo that the Court participated in the plea negotiations, the Court nevertheless did not coerce defendant into pleading guilty.  A court is not prohibited from participating in plea negotiations.  See Flores v. Estelle, 578 F.2d 80, 85 (5th Cir. 1978) (citing Brown v. Peyton, 435 F.2d 1352 [4th Cir. 1970]); United States ex rel. Robinson v. Housewright, 525 F.2d 988 [7th Cir. 1975]) (no federal constitutional bar to state judges participating in plea negotiations); United States ex rel. Rosa v. Follette, 395 F.2d 721, 725 (2d Cir 1968) ("mere

6

participation" of the court in plea negotiations does not
necessarily mean that the plea was coerced). A court is allowed to
"review the factors which a defendant might find relevant in making
a determination as to whether he wishes to change his plea to
guilty." People v. Davis, 54 A.D.2d 913, 915 (2d Dep't 1976). A
court oversteps its bounds only when it "ceases to function in an
impartial manner and becomes, instead, an advocate in persuading a
defendant to plead guilty." Id.

Here, the Court did not cease to be impartial or otherwise
coerce a guilty plea from defendant. The Court never addressed
defendant until after defendant's application to withdraw his plea
of innocent, so the Court had never urged defendant to plead
guilty. Moreover, the Court never threatened defendant with a
higher sentence if defendant exercised his right to a trial nor did
the Court make any other threats to induce a guilty plea. Compare
People v. Hollis, 74 A.D.2d 585 (2d Dep't 1980) (during plea
negotiations, court threatened to sentence defendant to seven and
one-half to fifteen years if defendant took the case to trial
rather than to accept an offer of four and one-half to nine years
if defendant pleaded guilty). Although sidebar conferences had
been held before defendant decided to plead guilty, defendant makes
no allegation about whether plea negotiations took place there or
whether the Court issued threats to defense counsel which were to
be passed on to defendant. Therefore, even if the Court had
participated in the plea negotiations, the Court nevertheless did

7

not coerce a guilty plea from defendant. Defendant's guilty plea, thus, was made knowingly and voluntarily.

In sum, defendant's motion to vacate the judgment should be denied on the ground that his papers are defective because he had not sworn to the truth of his allegation nor has he appeared before a notary public. His motion should also be denied on the additional procedural ground that the record contains sufficient facts on which defendant could have raised his claim on direct appeal, but that he unjustifiably failed to do so. Furthermore, defendant's motion should be denied on the merits because the record contradicts the allegations made in his motions and defendant shows no reasonable possibility that his allegations are true. Finally, defendant's motion should be denied because the Court adequately informed defendant of the rights he was waiving and because the Court did not coerce his guilty plea.

8

CONCLUSION

DEFENDANT'S MOTION TO VACATE THE JUDGMENT
SHOULD BE DENIED IN ITS ENTIRETY.

Dated:     Brooklyn, New York
           March 28, 1996

                                    Respectfully Submitted,

                                    CHARLES J. HYNES
                                    District Attorney
                                    Kings County

ROSEANN B MacKECHNIE
MICHAEL GORE
THOMAS M. ROSS
Assistant District Attorneys
       Of Counsel

ATT. #6.

Plea Transcript In Prior Conviction New York State.

1

1

2   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF KINGS - CRIMINAL TERM - PART 4
3   ----------------------------------------------X
    THE PEOPLE OF THE STATE OF NEW YORK,
4

5                                    Indictment
                    -against-         No. 14649/89
6
    MICHAEL HAMILTON,
7
                    Defendant.
8
    ----------------------------------------------X
9                                    360 Adams St.
    PLEA MINUTES                     Brooklyn, NY
10                                   April 16, 1991

11    B E F O R E:

12      HONORABLE CESAR CIRIGLIANO,

13                    Justice

14
    A P P E A R A N C E S:
15

16      OFFICE OF CHARLES J. HYNES, ESQ.
        DISTRICT ATTORNEY, KINGS COUNTY
17          Attorney for the People
        BY: ALLISON LUBELL, ADA
18

19

20      OFFICE OF ROBERT BAUM
        Attorneys for the Defendant
21          175 Remsen Street
            Brooklyn, New York 11201
22      BY:  MATTHEW COHEN, ESQ.

23

24                          VINCENT J. PALOMBO, RPR
                            OFFICIAL COURT REPORTER
25

2

1          Proceedings

2          THE CLERK:  Case on trial, Michael

3    Hamilton.  Number 14, added to the

4    calendar.  Indictment number 14649 of '89,

5    Michael Hamilton.

6          MR. COHEN:  Office of Robert Baum by

7    Matthew Cohen on behalf of Michael

8    Hamilton.

9    (Discussion held off the record.)

10         THE COURT:  I believe we may have a

11   possible disposition in this matter; is

12   that correct?

13         MR. COHEN:  Yes, your Honor.

14         THE COURT:  In lieu of that, do you

15   have an application to make?

16         MR. COHEN:  Judge, I would at this

17   time request that you re-examine the grand

18   jury minutes as to the value of the

19   property.  In lieu of all the testimony

20   we've heard, I do not believe the People

21   have properly made out that the value of

22   this property met the statutory

23   requirement of grand larceny.

24         As such, I believe all the People

25   could make out in this case is a petit

3

| | |
|---|---|
| 1 | Proceedings |
| 2 | larceny and I'm going to request at this |
| 3 | time that you reduce the charges within |
| 4 | the indictment before the Court to a petit |
| 5 | larceny, and criminal possession of stolen |
| 6 | property, I believe that would be in the |
| 7 | fourth degree, which is the misdemeanor. |
| 8 | THE COURT:  Originally I had inspected |
| 9 | the grand jury minutes in this matter and |
| 10 | I have the grand jury minutes in front of |
| 11 | me once again.  At the time I inspected |
| 12 | the Grand Jury minutes on 3/5/90, I |
| 13 | dismissed a count of burglary in the third |
| 14 | degree because I felt that the evidence |
| 15 | before the grand jury was insufficient in |
| 16 | making out that particular crime. |
| 17 | Does the district attorney wish to be |
| 18 | heard on this matter as I reevaluate my |
| 19 | decision? |
| 20 | MS. LUBELL:  No, Judge, there's no |
| 21 | argument from the People. |
| 22 | THE COURT:  Good.  At this time after |
| 23 | reevaluating the grand jury minutes again, |
| 24 | I feel that the grand larceny in the third |
| 25 | degree under the first count of the |

4

|    |                                                     |
|----|-----------------------------------------------------|
| 1  | Proceedings                                         |
| 2  | indictment, that there was insufficient             |
| 3  | evidence in order to sustain that                   |
| 4  | particular count.  As a result of that, I           |
| 5  | believe that there is sufficient evidence           |
| 6  | to make out a count of petit larceny.  So           |
| 7  | the top count in the indictment, grand              |
| 8  | larceny in the third degree, is being               |
| 9  | reduced to petit larceny.                           |
| 10 | Under the second count of the                       |
| 11 | indictment, after reviewing the grand jury          |
| 12 | minutes again, I feel that the evidence is          |
| 13 | insufficient to make out the felony of              |
| 14 | criminal possession of stolen property in           |
| 15 | the third degree and I'm reducing that              |
| 16 | count to a misdemeanor, to criminal                 |
| 17 | possession of stolen property in the                |
| 18 | fourth degree.                                      |
| 19 | As to the third and final count of the              |
| 20 | indictment that remains, criminal mischief          |
| 21 | in the third degree, I believe that the             |
| 22 | evidence before the grand jury is                   |
| 23 | sufficient and that count, which is a               |
| 24 | misdemeanor, is going to remain in the              |
| 25 | indictment.                                         |

5

1       Proceedings

2           That is the ruling of the Court.  So

3       the defendant now finds himself before

4       this Court on the charge of petit larceny,

5       criminal possession of stolen property in

6       the fourth degree, an A misdemeanor, and

7       criminal mischief in the third degree, as

8       charged in the indictment.

9           Now, do you have an application,

10      Counsel?

11          MR. COHEN:  Yes.  Judge, based upon

12      conferences we've had and extensive

13      discussions with Mr. Hamilton, I would

14      respectfully withdraw any previously

15      entered plea of not guilty and enter a

16      plea of guilty to petit larceny, 155.25 of

17      the Penal Law, understanding in this case

18      that the sentence shall be one year, to

19      run concurrent with any parole sentence

20      Mr. Hamilton may receive on this case; and

21      in addition, it's understanding that the

22      People do not intend on appealing any

23      decision in this case.

24          THE COURT:  My law clerk correctly

25      advises me that I made a mistake in the

6

1                       Proceedings

2       criminal possession count of the

3       indictment.  It is not the fourth degree

4       but has to be the 5th degree, that's the

5       misdemeanor.

6            So the record should be amended to say

7       that the criminal possession of stolen

8       property should be in the 5th degree,

9       165.40.

10           MS. LUBELL:  Can we just approach?

11      (Discussion held off the record.)

12           THE COURT:  Let the record also

13      indicate that I made a mistake as to the

14      criminal mischief in the third degree,

15      that is a D felony.  I thought it was an A

16      misdemeanor and I'm reducing criminal

17      mischief in the third degree to criminal

18      mischief in the fourth degree an A

19      misdemeanor.  So at this juncture of the

20      proceedings -- in all three instances, the

21      reason why I'm reducing it is I feel the

22      grand jury minutes were insufficient as to

23      the money values that are necessary in all

24      three of the counts in the indictment.

25      Therefore, I'm reducing them to A

7

|  | |
|---|---|
| 1 | Proceedings |
| 2 | misdemeanors. |
| 3 | Now, we have one other problem here. |
| 4 | Obviously, under the new law, as I |
| 5 | understand it, the DA has to file an |
| 6 | instrument in order to render this Court |
| 7 | jurisdiction.  In other words, if I reduce |
| 8 | it pursuant to the statute, you have to |
| 9 | file a new instrument, I think, in order |
| 10 | for me to sentence the defendant.  So |
| 11 | between now and the time of sentence, if |
| 12 | you file a new instrument we will sentence |
| 13 | him on that instrument. |
| 14 | I'll take the plea today and we'll |
| 15 | reiterate the plea on the adjourned date. |
| 16 | All right? |
| 17 | MR. COHEN:  Thank you.  Would you like |
| 18 | me to re-enter the pleas? |
| 19 | THE COURT:  Yes, please.  Enter the |
| 20 | plea. |
| 21 | MR. COHEN:  At this time, after |
| 22 | speaking with Mr. Hamilton, he has |
| 23 | authorized me to enter a plea of guilty to |
| 24 | 155.25 of the Penal Law, petit larceny, in |
| 25 | full satisfaction of the indictment before |

8

1           Proceedings

2       the Court, as reduced, with the

3       understanding that the sentence of this

4       Court, the promised sentence will be one

5       year incarceration which shall run

6       concurrent with any parole violation that

7       he receives, and in addition, that the

8       People agree to waive any appeal from the

9       decision of this Court, as to the grand

10      jury minutes in all other proceedings.

11          THE COURT:  Is that acceptable to the

12      district attorney?

13          MS. LUBELL:  That's acceptable to the

14      People.

15          THE COURT:  Mr. Hamilton, listen very

16      carefully.

17          Before I accept your plea, I want to

18      speak to you.  Before I accept your plea,

19      Mr. Hamilton, just let me go over your

20      rights with you.  You are presently on

21      trial and you know you have a right to

22      remain silent and have you a right to a

23      trial by jury or by judge, right?

24          THE DEFENDANT:  Yes.

25          THE COURT:  You have a right to

9

1          Proceedings

2     testify on your own behalf and bring

3     witnesses on your own behalf and if, in

4     fact, you went through with the trial, the

5     district attorney would have the burden of

6     proving your guilt beyond a reasonable

7     doubt; do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And by taking this plea,

10    what you're doing is giving up those

11    rights; do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Are you giving up all

14    those right of your own free will?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Are you giving up all

17    those rights because you indeed are guilty

18    of the crime of petit larceny, an A

19    misdemeanor?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Would the district

22    attorney comment on what they would prove

23    in this case?

24         MS. LUBELL:  One moment, Judge.

25         (Pause.)

10

1           Proceedings

2           Judge, the People would prove that on

3    or about October 20th of 1989, at

4    approximately 1:20 p.m. in the vicinity of

5    2750 Linden Boulevard at the Times Square

6    Store at that location, that the

7    defendant, Michael Hamilton, and an

8    apprehended other person, Lamont McAlpin,

9    entered that location and broke a jewelry

10   display counter and took a quantity of

11   jewelry from that counter.

12           THE COURT:  All right.  Did you hear

13   what the DA said?  Is that what happened?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Did you go into the Times

16   Square Store?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Did you know this guy

19   McAlpin?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Did you have a hammer?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Did you break the jewelry

24   case?

25           THE DEFENDANT:  Yes.

13

```
1                    Proceedings
2    of that indictment?
3         THE DEFENDANT:  Yes.
4         THE CLERK:  Sentence date, May 6th.
5         THE COURT:  May the 6th.  At that time
6    the district attorney will file a new
7    instrument and we'll reinstate the plea on
8    the new instrument.
9         We'll get the jury later to tell them
10   there's been a disposition in the trial.
11        MR. COHEN:  Judge, in case -- I don't
12   know if this makes any difference, but as
13   to Mr. Hamilton, he has been in since the
14   inception of this case.  He does have a
15   parole hold now, he's certainly going,
16   I'll ask you to reduce the bail at this
17   time to one dollar on the chance that
18   somehow he gets out on the parole hold.
19        THE COURT:  Any objection to that?
20        MR. COHEN:  Judge --
21        THE COURT:  He's taking a plea to a
22   misdemeanor.  He already has a year-and-a-
23   half in.  If the parole hold falls, he
24   should be getting out.  If it doesn't
25   fall, he stays in.
```

14

1                        Proceedings

2              MS. LUBELL:  No objection.

3              THE COURT:  Bail is one dollar over

4     one dollar.

5              MR. COHEN:  I'm sorry, you said May

6     6th?

7              THE CLERK:  Yes.

8              MR. COHEN:  That's fine.

9              THE COURT:  Thank you very much

10    counsels.

11                  '    *       *       *

12              Certified that the foregoing is a
                true and accurate transcript of the
13              original stenographic minutes in
                this case.
14
                _____
15              Vincent J. Palombo, RPR
                Official Court Reporter

16

17

18

19

20

21

22

23

24

25

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY: CRIMINAL TERM

---

THE PEOPLE OF THE STATE OF NEW YORK,

PLAINTIFF,

CV-01-0039

-against-

MICHAEL HAMILTON,

DEFENDANT.

Indictment
No. 14649/89

rec'd.

SCRANTON

JAN 1 0 2001

---

Hon. Caesar Cirigliano

DEPUTY CLERK

NOTICE OF APPEAL

To The Clerk of The above Court

Notice is hereby given that the above named Defendant Michael Hamilton,
Pro Se, hereby appeals the decision and order of the Supreme Court
of the State of New York; Kings County; Criminal Term rendered on
March 28,1996 and Dated on April 15,1996 in the above stated cause.
to the State Court of Appeals.

Respectfully Submitted

(MICHAEL HAMILTON)

April 23-96

Notarial Seal
Jeffrey E. Fromm, Notary Public
Lewisburg Boro, Union County
My Commission Expires Jan. 6, 1997

THE SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS : CRIMINAL TERM : PART 4

THE PEOPLE OF THE STATE OF NEW YORK,
                                    Plaintiff,

—vs—

MICHAEL HAMILTON,
         Defendant,

..................................X

HONORABLE CAESAR CIRIGLIAMO
         [JUSTICE]

INDICTMENT

No. 14649/89

PETITION TO VACATE AND SET
ASIDE JUDGMENT AND SENTENCE

Comes now, **Michael Hamilton**, defendant pro se, who respectfully moves the court for an **ORDER** Vacating and Setting Aside Judgment and Sentence in the above numbered case for reasons that said conviction was obtained in a manner which violated defendant's rights guaranteed by the Constitution of the United States and by the Constitution of the State of New York as shown hereinafter.

Respectfully Submitted,

Michael Hamilton
Michael Hamilton

## STATEMENT OF FACTS

Indictment numbered 14649/89 charged defendant with grand larceny in the first degree; criminal possession of stolen property in the third degree; and, criminal mischief in the fifth degree. A trial before a jury was conducted. However, during the course of the trial, a motion was made, and the charges of grand larceny in the first degree were reduced to petit larceny; criminal possession of stolen property in the third degree was reduced to the fifth degree; and, criminal mischief in the fifth degree to criminal mischief in the fourth degree. At that point defendant plead guilty to petit larceny law in satisfaction of the indictment that was pending and was sentenced to a term of one (1) year imprisonment.

## MEMORANDUM OF LAW

The law is crystal clear that before accepting a plea of guilty the court <u>must</u> address the defendant personally and <u>must</u> inform him of each and every right his plea is waiving and asssue that the defendant is fully aware of the consequences of his guilty plea. <u>BOYKIN -vs- ALABAMA</u>, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d. 274 (1969); <u>McCARTHY -vs- UNITED STATES</u>, 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 418 (1969). This is a common

(2)

requirement.  SEE: ABA Standards Relating To Pleas Of Guilty,
Section 1.4(a) (approved draft 1968).  SEE ALSO: Federal Rules
of Criminal Procedure, Rule 11, et. seq.

In this case, sub judice, the court failed to advise defen-
dant of any of his constitutional rights prior to accepting his
guilty plea.  Defendant states that he did not knowingly and
intelligently waive those rights.

Moreover, defendant submits that the guilty plea is unconsti-
tutional in that it was the court who negotiated the 'plea bargain'
with the promise of a one (1) year sentence.  SEE: Sentencing
Transcript, [Appendix A], attached herewith.

The court shall not participate in any such [plea bargain]
discussions.  Rule 11, 2(e)(c), Federal Rules of Criminal Pro-
cedure.  Subdivision (e)(1) prohibits the court from participating
in plea discussions.  ABA Standards Relating To Pleas Of Guilty,
Section 3.3 [Approved Draft 1968].

There are valid reasons for a judge to avoid involvement
in plea discussions.  It might lead the defendant to believe
that he would not receive a fair trial, were there a trial
before the same judge.  The risk of not going along with the

(3)

disposition apparently desired by the judge might induce the
defendant to plead guilty, even if innocent.  Thus, a judge
should not be a party to advance arrangements for the determi-
nation of sentence, whether as a result of a guilty plea or a
finding of guilt based on proof.  51 A.B.A.J. 444 (1965).
UNITED STATES ex. rel ELKSNIS -vs- GILLIGAN, 256 F. Supp. 244,
254 (S.D.N.Y. 1966).


## CONCLUSION


   Wherefore, for the reasons stated above defendant respect-
fully moves the court for an ORDER Vacating Judgment And Sentence
in the above numbered case.




                                   Respectfully Submitted,


                                   _Michael Hamilton_
                                   Michael Hamilton
                                   Defendant Pro Se



```
FILED
AND
ENTERED
ON APRIL ___, 1996
KINGS
COUNTY CLERK
```

SUPREME COURT OF THE STATE OF NEW YORK
KINGS COUNTY : CRIMINAL TERM

1:01 CV-01-0039

-----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

                            Respondent,

- against -

MICHAEL HAMILTON,

                         Defendant.

-----------------------------------------------------------------X

Cirigliano, J.S.C.

**DECISION & ORDER**

Ind. No. 14649/89

rec'd

FILED

SCRANTON

JAN 1 0 2001

DEPUTY CLERK

        In late 1989 defendant was indicted for Grand Larceny in the Third Degree, Criminal Possession of Stolen Property in the Third Degree, Burglary in the Third Degree and Criminal Mischief in the Third Degree arising from an incident in which he broke a glass of a store display with a hammer and took a handful of diamond jewelry.  After reviewing the Grand Jury minutes, I dismissed the burglary count and reduced the grand larceny to petit larceny, the possession of stolen property from the third to the fifth degree and the criminal mischief from the third to the fourth degree.  After the reduction, on April 19, 1991, defendant pled guilty before me to petit larceny in full satisfaction of all the

charges.  I promised a sentence of one year of jail with a recommendation to the parole
board that the sentence run concurrent with any parole violation time.  On May 7, 1991,
I sentenced defendant as promised.  Thereafter, I was reassigned from Supreme Court,
Kings County to Supreme Court, Westchester County.

Defendant then moved pro se, presumably pursuant to CPL 440.10, in
Supreme Court, Kings County, for an order vacating his judgment and sentence.  Justice
Gary of that Court has now referred the motion to me.

The gravamen of the motion is that defendant did not knowingly and
intelligently enter his plea of guilty because: (i) the court failed to advise him of his
constitutional rights, and (ii) the court negotiated the plea bargain.

As to the first prong of defendant's motion, as an initial matter, it must be
denied because the record is sufficient to have permitted adequate review on direct appeal.
(CPL 440.10[2][b]; People v Cooks, 67 NY2d 100.)  In any event, the record contradicts
defendant's claims.  The plea minutes confirm that the court informed defendant of the full
panoply of his constitutional rights before accepting his plea.  (Cf., People v Fiumefreddo,
82 NY2d 536.)

As to the court's asserted participation in the plea negotiations, the only
allegation made, which is true, is that I indicated the sentence that would be imposed if the
plea were accepted.  While this may have violated Rule 11(e) of the Federal Rules of
Criminal Procedure, that rule has no application in this court.  (United States ex rel. Rosa
v Follette,  395 F2d 721 [2d in 1968] cert denied 339 US 892.  See also, Flores v Estelle,

2

578 F2d 80, cert denied 440 US 923.)

Inasmuch as the judgment need not be vacated and the sentence was in accordance with the law (CPL 70.15, 155.25) there is no basis for vacating the sentence (People v Cooks, 67 NY2d 100, supra.)

For the foregoing reasons, the motions is denied.

The court has considered the following papers on this motion:

Defendant's Petition to Vacate and Set Aside Judgment and Sentence served

December 13, 1995; and

Affirmation in Opposition dated March 28, 1996.

Dated: White Plains, New York
April 15, 1996

_____
Caesar Cirigliano, J.S.C.

TO:   Hon. Charles J. Hynes
      District Attorney, Kings County
      210 Joralemon Street
      Brooklyn, New York 11201
      Thomas M. Ross, Esq., Of Counsel

      Mr. Michael Hamilton
      17072-057
      PO Box 1000
      Lewisburg, Pa. 17387

3